James M. CHASE, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13196.

Court of Criminal Appeals of Oklahoma.

May 29, 1963.

Lewis F. Oerke, Lawton, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

PER CURIAM.

This is an appeal by James Matthew Chase, plaintiff in error, defendant below. He was charged by Information in the District Court of Comanche County, Oklahoma, with the murder of his wife, Victoria Elizabeth Chase, allegedly committed on May 4, 1961. More particularly, the Information charged that Chase beat his wife to death with his fists, hands, feet, boots, and a tubular instrument (the description of which was unknown), and a steel military helmet; all of which he did with premeditated design, and as a result of said beating, Mrs. Chase died.

Defendant was tried by a jury, convicted of First Degree Manslaughter, and his punishment fixed at 15 years in the State Penitentiary. Judgment and sentence was entered accordingly, from which this appeal has been perfected.

The state's proof, both direct and circumstantial, established briefly the following facts:

The defendant and his wife and two small children resided in Lawton, Oklahoma, the defendant being an army officer with the rank of Captain, stationed at nearby Ft. Sill. Captain Chase had been away from home on special assignment in New Mexico, from which he returned in the late afternoon before the fatal episode.

In a written, free and voluntary statement given after being advised of his rights, that the statement could be used against him, and that he could have the aid of counsel if he so desired (which he declined); Captain Chase made a confession of guilt, of beating his wife to death.

He stated in substance that on his return home he found his wife in a drunken condition, which she denied to him. His investigation disclosed the source of her condition, and an argument ensued that continued and grew in violence up into the night, and the fight ensued. He admitted he shoved and hit Mrs. Chase with his fists, he didn't know how many times. He related that he remembered knocking her down but she got up and they scuffled some more, but, he said, "I just can't remember how many times I Hit her." He said the fight stopped about 8:30 p. m. and he went about his chores. He did not know where his wife was until he went into the bedroom and found her on the bed. He blew up his army mattress, put it in front of the hi-fi in the living room, carried his wife in and placed her on the mattress. Then he said he went to bed. When at 6:30 a. m. the next morning, he called his wife and got no answer, he pulled the cover off of her; then, thinking she was cold he put a blanket over her. Later he soaked a blanket in hot water and put it around her. Then he moved her to the bedroom, where he put her pajamas on her; she being before then, in the nude. He then called the ambulance, which took her to Ft. Sill Hospital, where she was pronounced dead.

The state's evidence did not establish the defendant was drunk until the officers who arrived after being notified of the tragedy, and because of the close contact, discovered that he had been drinking and had a strong smell of stale alcohol on his breath.

Captain Joseph C. Gaulin, Army Pathologist, testified in substance as follows, regarding Mrs. Chase's fatal injuries:

"The body showed external evidence of a severe beating. There were numerous bruises all over the body, too numerous to count, even. Both eyes were shut, closed, swollen. The cheeks were also bruised, swollen; the mouth, the entire body, I would say, arms, legs, back, Buttocks. There were also cuts within the mouth. There was

dried blood in and around the mouth and nose, and it was evident that this body had received a tremendous beating before.

"* * * there was evidence that there had been numerous internal injuries diffuse throughout the various systems.

"* * * those that were of a more significant nature were changes within the lungs.

"* * * evidence of bleeding in each area of the lungs.

"* * * there was also evidence of bleeding into the pleural space.

"* * * in the abdominal cavity there was also bloody fluid.

"* * * and there was also evidence of bruising of various internal organs and tearing of some of the organs."

He then testified of damage to the liver and the pancreas, indicative of strong blows in the region of those organs. He related bruises on the body correlated to the internal injuries. He said, "Most of them were of a wide diffuse type that could be caused by anything from a fist to a flat object or some blunt wide object." Then he said, "* * * the ribs showed a lot of areas of hemorrhage around the ribs, but no fractures, anywhere." "The brain showed, I beleive, four small areas of hemorrhage at various places", he testified. "There was also evidence of hemorrhage within the scalp region, the type you would see in a blow or a bump." He testified the bruises on the body were of various types as though they might have been inflicted by the fist; an army helmet (found on the premises with paint chips and a dent in it); and "a broom handle or two rods held together". The voluminous photographic evidence of the bruises support his conclusions. Death, Captain Gaulin testified, was by reason of the accumulation of lesions throughout the body, which produced a profound shock state, and collapse of all of the vascular systems. The beating itself brought on the shock and collapse, with ensuing death. There was also a fatty degeneration of the liver which existed before the beating, but his testimony established on cross-examination when pressed by counsel as to the cause of death; "a shock state probably of neurogenic origin due to the beating itself." The gist of his testimony was to the effect that while the fatty condition of the liver made Mrs. Chase more susceptible to such a shock, it was the beating that produced the shock, and death.

The broom found on the premises had a broken handle that had been broken and taped, then re-broken and re-taped.

There was blood on the sheets; on the wall; wet clothes had blood spots on them; and a towel in the garage by the washing machine had blood stains on it. A sheet that had been washed, hanging on the line, had blood on it. The bedspread found in the kitchen had blood on it.

The record shows that from April 13, 1961 to May 2, 1961, Mrs. Chase had purchased by check from various liquor stores in Lawton, $27.51 worth of liquor.

There was much other testimony, all of which pointed to the inescapable guilt of Captain Chase.

When the state rested, the defendant offered no defense in his own behalf, but presented testimony of good reputation for being a peaceful and law abiding citizen, and good officer. The defendant moved for a directed verdict, on all the evidence, which the trial court properly overruled.

■ In Pierce v. State, Okl.Cr., 371 P. 2d 924, this Court said:

"In a murder prosecution where there is competent evidence in the record from which the jury could reasonably conclude the defendant was guilty of manslaughter in the first degree, Court of Criminal Appeals will not interfere with verdict, even if there is sharp conflict in the evidence and different inferences might be drawn therefrom, since it is the exclusive province of the

the jury to weigh the evidence and determine the facts."

This conviction presents no conflict in the evidence. The defendant's statement supported by the irrefutable circumstantial evidence of guilt, strongly supports the jury's verdict. We would not be justified in modifying the penalty imposed herein.

Where the record shows that modification is unwarranted by the facts and circumstances, the judgment and sentence will be affirmed. Curry v. State, Okl.Cr., 370 P.2d 577.

We cannot follow the defendant's contention that the evidence is sufficient only to sustain a conviction of Second Degree Manslaughter. The defendant's principal contention is that the fight was not an unlawful enterprise, but that the killing was unintentional and that the defendant is guilty of only culpable negligence and that death would not have ensued had it not been for the fatty condition of Mrs. Chase's liver.

This contention is positively contrary to the photographic evidence of the severe beating sustained by Mrs. Chase. Her battered, bruised and swollen body clearly demonstrated the unlawful nature and the intent of the perpetrator to inflict severe injury. It was ample evidence of the premeditated design to make her suffer anguished pain. Moreover, the intent to produce a fatal result is evidenced by the scope of the beating; scarcely an inch of her body was left untouched.

The contention that death would not have ensued had it not been for the fatty condition of Mrs. Chase's liver is contrary to the testimony of the army pathologist to the effect that the beating brought on the shock, the vascular collapse, and was the efficient cause of Mrs. Chase's death.

Wharton's Criminal Law, 13th Edition, pg. 40, says:

"It is well settled the consequences of an act which is the efficient cause of the death of another are not excused, nor is the criminal responsibility for causing death lessened, by the pre-existing physical condition of the person killed, at the time the act was done, or by his low vitality, which rendered him unable to withstand the shock of the wound inflicted, and without which pre-existing condition the blow would not have been fatal, if causal connection between the blow and the fact of death is made to appear. Accordingly, the fact that the victim died from the combined effects of the wound maliciously inflicted by the defendant and a disease not connected with the wound does not relieve the defendant of liability."

40 C.J.S. Homicide § 11, pg. 855, states the rule more concisely, as follows:

"Responsibility for homicide attaches to one who accelerates the death of a person in poor physical condition, although the injury inflicted would not have killed a healthy person, and although the condition from which the victim was suffering would itself probably have been fatal. Accused's ignorance of the victim's poor condition is immaterial."

Baker v. State, 65 Okl.Cr. 136, 83 P.2d 586–591; therein it is stated that the foregoing rule is one of general application. It is pointed out that:

"One who inflicts an injury on another is deemed by the law to be guilty of homicide if the injury contributes mediately or immediately to the death of such other."

In short, "One who inflicts an injury on another and thereby accellerates death shall be held criminally responsible therefore." 13 R.C.L. Par. 55, pg. 750.

The testimony on the part of the state, both direct and circumstantial, if believed by the jury, was more than sufficient to sustain the conviction. The Instructions, and particularly No. 14, amply covered the defendant's theory of mis-adventure, in

fact, they were more than the defendant was entitled to under the evidence. Beating one's wife to death can hardly be countenanced as a "mis-adventure".

Finding no substantial error, the case is accordingly

Affirmed.

The Court of Criminal Appeals acknowledges the aid of Supernumerary Judge JOHN A. BRETT in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Judge of this Court, and thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.