Geary Wayne WOFFORD, Appellant

v.

The STATE of Oklahoma, Appellee.

No. F–76–854.

Court of Criminal Appeals of Oklahoma.

Sept. 8, 1978.

Lantz McClain, Sapulpa, for appellant.

Larry Derryberry, Atty. Gen., Michael P. Kane, Asst. Atty. Gen., for appellee.

OPINION

CORNISH, Judge:

Appellant, Geary Wayne Wofford brings this appeal from a conviction for Second Degree Murder, under the provisions of 21 O.S.1971, § 701.2, and sentence of ten (10) years to life imprisonment in the State penitentiary. At trial, the State's evidence showed defendant and two accomplices went to decedent's home on August 5, 1974. Decedent, who was 70 years old and had advanced heart disease, apparently died of a heart attack after being tied, beaten and robbed.

■ Defendant's first assignment of error is that the trial court erred in refusing to grant his motion to dismiss the charge because of the State's failure to arraign him within the statutory time. Title 22 O.S.1971, § 470, provides that a defendant must be arraigned within 30 days from the day he is ordered held for trial upon a preliminary information charging the commission of a felony. The defendant in the instant case was ordered held for trial on May 7, 1975, and his arraignment was set for May 19, 1975. However, he was not arraigned until June 23, 1975, on which date he entered a plea of not guilty without filing any motion to quash or set aside the information. We have previously held that a plea to the merits of the charge will act as a waiver of any irregularity in the proceedings prior to that point. *Ex parte Norris*, 88 Okl.Cr. 450, 204 P.2d 291 (1949); *Stucker v. State*, Okl.Cr., 493 P.2d 84 (1972). For that reason, the defendant is not now entitled to complain of the delay in holding the arraignment.

■ In his second assignment of error, the defendant contends the evidence was insufficient to establish the crime of Murder in the Second Degree, since the State failed to establish a causal link between death of the victim and the commission of the crime, as opposed to being merely coincidental in time. Here, the victim had a pre-existing heart condition. The evidence reflects his body was discovered bound with an electrical cord, a wet towel was tied around his mouth and face, and there was a bruise over his forehead. There was further evidence that personal property of value was taken from the victim's home. At trial, a pathologist expressly testified that in his opinion it was the physical and emotional stresses of the situation that affected the operation of the victim's heart and led directly to his death. In *Chase v. State*, Okl.Cr., 382 P.2d 457 (1963), we held that one will be held liable for homicide if one accelerates the death of a person in poor physical condition, even though the injury inflicted would not have killed a healthy person and although the condition from which the victim was suffering would itself probably have been fatal. We find the testimony on the part of the State, if believed, was more than sufficient to sustain the conviction. Accordingly, we find this assignment of error meritless.

Third, the defendant argues the trial court committed error in admitting the testimony of a pathologist in response to a hypothetical question which briefly describ-

ed the situation in the Latham home, and then asked whether that situation accelerated the death of Mr. Latham:

Q. Now, Doctor, do you have an opinion, assuming Hershel (sic) Latham, the man you examined there, had been the evening of his death the preceding night from the day you examined him working in the yard cutting hedge, talking to his wife at nine thirty on the telephone, or thereabouts, and his son around nine fifteen and was in the security of his own home, a man with a heart condition that you have indicated that you found there, the ancient heart condition that you found there, suddenly was confronted with his front door being opened as revealed on State's Exhibit 34, and he being tied up as shown on State's Exhibit Number 31 and 4, and his face covered with towels, one being wet and tied behind his back, behind his head, do you have an opinion as to whether or not that excitement and trauma, considering the blow you found on the head and the sum total of your observations that you found there that you saw, as to whether or not the stress and emotion of that type of situation aggravated and speeded up the death of Hershal (sic) Latham, please, sir?

Defendant maintains there was no basis in fact for the question. He contends the hypothetical included facts never placed in evidence, particularly the statement that the victim's face was covered with towels, with the resulting insinuation of strangulation. We note the victim's wife testified that she came home to find the house in disarray, her husband lying on his back in the kitchen with his hands underneath his body. He had a knot on his forehead and a trickle of blood from his mouth, and there were deep bruises around his arms and legs where they were tied. On direct examination, the wife testified the victim had a towel over his face, fastened under his head. On cross-examination, she stated her husband had a tea towel twisted and tied tightly over his eyes around his head; a wet turkish bath towel folded lengthwise was tied over his face to the lower part of his chin from the forehead.

It is well settled that a hypothetical question on direct examination is sufficient if it fairly states such facts in evidence as are relevant and material and sufficient to the formation of an accurate opinion by an expert witness, but it is not necessary such facts be clearly proved. *City of Duncan v. Sager*, Okl., 446 P.2d 287 (1968). Furthermore, it is error to assume, in a hypothetical question, material facts alleged but not theretofore established by competent evidence. *Cities Service Gas Co. v. Eggers*, 186 Okl. 466, 98 P.2d 1114 (1940).

 This Court in *McBirney v. City of Tulsa*, Okl.Cr., 505 P.2d 1403 (1973), adopted the reasoning of the Wisconsin court in *Rausch v. Buisse*, 33 Wis.2d 154, 169, 146 N.W.2d 801, 809 (1966):

" ' . . . In other words, a party has a right to an opinion of an expert witness on the facts which that party claims to be the facts of the case. This rule is subject to the limitation that questions which unfairly select part of the established facts or which omit material parts should be rejected. However, the normal rule is that any disadvantage to the defendant by the hypothetical question should be remedied on cross examination.' " (Footnotes omitted)

In the case at bar, we find in reviewing the transcript that at no time did defense counsel on cross-examination attempt to demonstrate that the hypothetical question was premised on an impermissible inference. We think there was sufficient evidence to support the trial court's ruling. Defendant's third assignment of error is without foundation.

 The defendant, in his fourth assignment of error, urges reversible error was committed by the prosecuting attorney throughout the trial. He alleges the prosecutor made inflammatory and prejudicial remarks during his opening and closing arguments, and asked improper and prejudicial questions of the witnesses. As to the opening and closing arguments, we note that, with one exception, the defendant made no objections and the one time he did

object, he failed to ask for an admonishment. As we stated in *Box v. State*, Okl. Cr., 505 P.2d 995 (1973), a defendant must not only object to improper argument, he must also ask for an admonishment, unless the remarks are of such a nature that they cannot be cured. In the instant case, we find no remark so prejudicial that it could not have been cured by an admonishment. For that reason we hold all error in the opening and closing arguments to have been waived.

■ The other instances of which defendant complains involve placing before the jury evidence of other crimes committed or allegedly committed by the defendant. The general rule is that evidence of other crimes is inadmissible, with certain recognized exceptions. *Moulton v. State*, Okl.Cr., 476 P.2d 366 (1970).[1] The situation in the instant case fits none of the recognized exceptions, and it was error to admit the evidence. But in view of the strength of the State's case, we do not find that the defendant suffered any prejudice. For that reason we hold the error to be harmless.

Defendant's final assignment of error concerns the instructions. He first alleges it was error for the trial court to refuse to give a requested instruction; but an inspection of the record shows that the instruction was requested in December, 1975, during the first trial. It is to be noted that the first trial ended in a mistrial. The record does not reflect that the instruction was requested at the second trial. It is well settled in this jurisdiction that if counsel is not satisfied with instructions or wishes a court to give particular instructions, it is his duty to prepare and present to the court the desired instructions. *Wells v. State*, Okl. Cr., 559 P.2d 445 (1977). Therefore, the instruction was not properly preserved.

■ Next, defendant contends the jury should have been instructed as a matter of law that two of the State's witnesses—Marla Greer and Linda Johnson—were accomplices. However, the evidence presented did not necessitate such an instruction.

The State's evidence showed that Marla Greer participated with Shoemake, Johnson and the defendant in the theft of a pickup on the evening of August 5, 1974. The four went to the home of the defendant's brother-in-law where Marla Greer stayed when the three men left. When the trio returned, in a different vehicle, she accompanied them to a different house where the three men sorted jewelry, coins and weapons. Under this evidence, Ms. Greer was an accomplice in the theft of the pickup, but not in the robbery of Mr. Latham's home. She was only an accessory to the latter crime. Furthermore, although the defendant presented evidence that Ms. Greer knew that defendant had not participated in the robbery and that it had been committed by Shoemake and Johnson alone, such evidence was insufficient to require an instruction that Ms. Greer was an accomplice.

Linda Johnson's first connection with the crime occurred the day after the robbery. She rode with her husband, William Lester Johnson, Shoemake and the defendant to Oklahoma City, where they disposed of some of the stolen property. Linda Johnson, too, was an accessory to the robbery, not an accomplice.

■ Defendant next argues the trial court gave an instruction on facts not in evidence, which tended to mislead the jury to the prejudice of the defendant. Specifically, defendant objects to Instruction No. 14, which reads in pertinent part, "if you

---

1. This Court said in the first paragraph of the Syllabus in *Moulton v. State*, Okl.Cr., 476 P.2d 366 (1970) that:

 "The general rule in this state is that when a defendant is put upon trial for one offense he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone and the admission of evidence of other crimes, either prior or subsequent to the offense for which he is on trial is inadmissible.

 However, evidence of separate and similar offenses is admissible when it is material and proper to show (1) motive, (2) intent, (3) absence of mistake or accident, (4) identity of person charged with the commission of the crime for which an accused [is] put on trial, and (5) common scheme or plan embracing the two or more crimes so related to each other that proof of one tends to establish the other."

find and believe . . . that one Geary Wayne Woffard (sic) did, . . . inflict upon the body of Herschel Latham, mortal wounds, fright, bearing (sic) and asphyxiation, . . . ." The defendant argues that no evidence was presented concerning any beating, strangulation, or asphyxiation of the decedent.

The State's evidence, however, shows decedent's head was bruised, blood was trickling from his mouth, and a wet turkish towel was tied around his head. These facts support that portion of the instruction to which objection was raised.

After carefully examining all the instructions we find they contain no fundamental error. They did not result in a miscarriage of justice, nor constitute a substantial violation of any constitutional or statutory right. The defendant's final assignment of error is without foundation.

From an examination of the entire record, it is our opinion the defendant received a fair and impartial jury trial and that no error was committed requiring modification or reversal. The judgment and sentence appealed from is, therefore, *AFFIRMED.*

BUSSEY, P. J., and BRETT, J., concur.