**J.L. GORE, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–84–747.**

Court of Criminal Appeals of Oklahoma.

March 30, 1987.

Pamela Sue Holtzclaw, Oklahoma Center for Criminal Justice Project, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Sandra D. Howard, Legal Intern, Oklahoma City, for appellee.

BUSSEY, Judge:

The appellant, J.L. Gore, was charged, tried and convicted in the District Court of Atoka County for the crime of Obtaining Cash and/or Merchandise by Bogus Checks in Case No. CRF–82–114 and was sentenced to five (5) years imprisonment, and he appeals.

On July 10, 1982, a cattle buyer, who identified himself as Dan Pryor, came to the Atoka Livestock Auction to purchase cattle for the J.L. Gore Cattle Co., with a check signed and printed with the name J.L. Gore, but the dollar amount left blank. Mr. Cochran, the manager of the livestock barn, took the check and obtained the address and phone number of appellant. Mr. Cochran's wife filled in the sale amount of $9,410.76 on the check and called the telephone number printed on·the check. The man she spoke with identified himself as J.L. Gore, stated that he sent Pryor to purchase the cattle for him and stated that the check was valid. He told Mrs. Cochran that she could call his banker, David Allen, if she wanted to, and she called the banker, and he stated that a check in the range of $10,000–$15,000 would be acceptable. Subsequently, Mrs. Cochran called appellant back so Mr. Cochran could visit with him, and appellant told him that Mr. Pryor was buying the cattle for him because he was going to another sale. Following the phone conversations, Mr. Pryor loaded the cattle on a trailer and departed.

At trial, David Allen, vice president and loan officer of First National Bank and Trust in Sulphur, Oklahoma testified that he was familiar with appellant and that the check presented to Atoka livestock auction was presented against appellant's account at the bank. Also, the bank's signature card was admitted into evidence and Mr. Allen testified that the signature on the card was the authorized signature that appeared on the check. He further testified

that when the check was drawn, there was insufficient funds to cover it.

The Cochrans have never received any money to make good on the check nor have their cattle been returned.

■ The appellant first contends that fundamental error occurred when the trial court admitted hearsay testimony. Specifically, he argues that the State's first witness, Orin Cochran, testified concerning Mr. Pryor's nonverbal assertions to the effect that the check in question was not his. We first note that Mr. Pryor's assertions that the check was not his were not hearsay testimony. Furthermore, even if this testimony was hearsay, we are of the opinion that these assertions are admissible as part of the entire transaction, formerly referred to as res gestae, in that, without these assertions the main fact might not be properly understood. *See Dixon v. State,* 560 P.2d 204 (Okl.Cr.1977); *Beavers v. State,* 709 P.2d 702 (Okl.Cr.1985). Therefore, this assignment of error is without merit.

■ In his second assignment of error, the appellant argues that fundamental error occurred when the trial court allowed Mr. and Mrs. Cochran to testify to the contents of their respective phone conversations with the appellant when they could not personally identify the voice, and the State failed to establish the number dialed was the number assigned by the phone company to the appellant. We find that the requirement of identification was clearly met in the instant case since "... [T]he call was made to a place of business and the conversation related to business reasonably transacted over the telephone." *See* 12 O.S.1981, § 2901(B)(6)(b). Furthermore, the State introduced the Cochran's telephone bill to prove that they did call appellant's number, introduced one of appellant's checks on which his phone number was imprinted, and presented evidence that the number the Cochrans called was the number that appellant's bank had listed for him. This assignment of error is without merit.

■ Appellant's third assignment of error is that the evidence was insufficient to sustain his conviction for the reason that the State never established that he obtained possession of the cattle. We first observe that actual physical possession is not a necessary element of the crime of Obtaining Cash and/or Merchandise by Bogus Checks. Title 21 O.S.Supp.1983, § 1541.1 provides in pertinent part:

Every person who, with intent to cheat and defraud, shall obtain or *attempt to obtain* from any person, firm or corporation any money, property or valuable thing.... (Emphasis added).

Furthermore, the State did present testimony that the cattle were loaded on a trailer and driven away by Mr. Pryor who was acting in behalf of appellant.

■ Appellant also argues that the State failed to prove any fraudulent intent on the part of appellant. This Court has held that while intent to defraud and cheat is a necessary element of the offense, it is often difficult to prove by direct evidence, and therefore may be shown by inference from the acts of the defendant. *Ross v. State*, 687 P.2d 1063, 1065 (Okl.Cr.1984). In the instant case, the check, which was signed by appellant, was returned due to insufficient funds and is prima facie evidence of appellant's intent to defraud. *See* 21 O.S.1981, § 1541.4. Moreover, appellant has never made any attempt to make restitution nor have the cattle been returned. Viewing this evidence in the light most favorable to the State, we are of the opinion that the State proved the essential elements of the crime beyond a reasonable doubt. *Spuehler v. State*, 709 P.2d 202 (Okl.Cr.1985). This assignment is meritless.

■ As his final assignment of error appellant contends that the trial court erred in its communication with the jury, after it announced deadlock, by not informing the jury that it was not being forced to agree upon a verdict. He argues that the trial court's actions coerced the jury into reaching a unanimous verdict. The judge's written response in this case stated that:

In response to your question, you are advised that you have been handed all the instructions that you are to receive in determining this case. Please read and re-read the instructions as a whole and continue upon your deliberations in an effort to reach a verdict in this case. (Tr. 211–213).

Neither party objected to this response when asked by the judge if they had an objection; therefore, this assignment is waived. *Jetton v. State*, 632 P.2d 432 (Okl. Cr.1981). Moreover, we find that his response was not coercive. *See Day v. State*, 620 P.2d 1318 (Okl.Cr.1980). This assignment of error is groundless.

The judgment and sentence is AFFIRMED.

BRETT, P.J., concurs.

PARKS, J., specially concurring.

PARKS, Judge, Specially Concurring:

Although I concur with the majority's opinion that this conviction must be affirmed because witness Cochran's testimony was not hearsay, I write separately to express my disagreement with the majority's assertion that "even if this testimony was hearsay ... these assertions are admissible as part of the entire transaction, formerly referred to as res gestae...." *See, supra*, at 578.

There is no longer a *res gestae* or "entire transaction" exception to the hearsay rule under the Oklahoma Evidence Code. *See* 12 O.S.1981, § 2803. As the Evidence Subcommittee's Note to Section 2803 states:

*In no instance in these rules is the term "res gestae" employed. The vagueness and imprecision in the term "res gestae" and the circumstances under which it should be employed to admit otherwise inadmissible hearsay evidence affords a convenient escape from the hearsay doctrine and under conditions much less appropriate than might be employed under the general exception of 803(24) of these rules. Accordingly, "res gestae" is specifically abandoned in these rules as an exception to the hearsay rule in favor of the*

*more specific categories of exceptions recognized herein.* (emphasis in original)

*Accord* Note, *Criminal Law: The "Excited Utterance" Exception to the Hearsay Rule: An Analysis of Federal and Oklahoma Law in Light of Newbury v. State,* 39 Okla.L.Rev. 84, 85 n. 16 (1986). Moreover, the cases cited by the majority are not on point. *Dixon v. State,* 560 P.2d 204 (Okl.Cr.1977), is a pre-Code opinion based on the common law *res gestae* exception to the hearsay rule; and, *Beavers v. State,* 709 P.2d 702 (Okl.Cr.1985), in which this writer filed a dissenting opinion, relates to the application of the excited utterance exception to the hearsay rule.