**John Joseph ROMANO, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–93–75.

Court of Criminal Appeals of Oklahoma.

Dec. 19, 1995.

Rehearing Denied Jan. 24, 1996.

Kurt Geer and Regina Stephenson, Assistant Public Defenders, Oklahoma City, for Appellant at trial.

Jennifer Lee and Jaye Mendros, Assistant Public Defenders, Oklahoma City, for Appellant on appeal.

Lou Keel and Steve Deutsch, Assistant District Attorneys, Oklahoma City, for the State at trial.

Susan Brimer Loving, Attorney General and A. Diane Blalock, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

## OPINION

STRUBHAR, Judge:

Appellant, John Joseph Romano, was tried by jury in the District Court of Oklahoma County, Case No. CF–86–3920, before the Honorable Daniel J. Owens, District Judge. Appellant was convicted of Murder in the First Degree (21 O.S.1981, § 701.7). The jury found two (2) aggravating circumstances and recommended the death penalty. The trial court sentenced Appellant accordingly.

The facts of this case are set out in detail in *Woodruff v. State*, 825 P.2d 273, 273–274 (Okl.Cr.1992). Appellant's first trial resulted in a conviction and death sentence. The judgment and sentence was reversed for failure to sever his trial from co-defendant Woodruff's. *Romano v. State*, 827 P.2d 1335, 1338 (Okl.Cr.1992). Stated briefly, Appellant and David Woodruff[1] planned to rob Lloyd Thompson, decedent. They conned their way into decedent's apartment, turned up the stereo volume to mask the sounds of their attack and murdered decedent. After leaving the scene Appellant disposed of their bloody clothing and knives. Appellant and Woodruff each returned to their homes carrying several hundred dollars. Appellant cleaned up and left the next day on a family trip to Clovis, New Mexico, where he was arrested and questioned. In Appellant's retrial, witnesses for the State included: decedent's former neighbors Daniel Powell, Ollie Irvin and Diana Wickham; Woodruff's former girlfriend Denise Howe; the medical examiner Dr. Larry Balding; the officers who arrested and interviewed Appellant in Clovis, Deputy Guy Brown and Detective Eric Mullenix; and Captain Tom Bevel, a blood spatter expert. Appellant did not testify at trial. Other facts will be presented as they become relevant.

### ISSUES RELATING TO
### JURY SELECTION

▮▮▮ In his twenty-ninth proposition of error Appellant contends Oklahoma's method of summoning venire panels fails to present a fair cross section of the community and violates his sixth, eighth and fourteenth amend-

ment rights. Appellant presents two arguments in his proposition: (1) that 38 O.S. 1991, § 18(B)(1) impermissibly excludes from jury service distinct groups who do not possess driver's licenses; and (2) that 38 O.S. 1991, § 28(a) impermissibly allows potential jurors over the age of seventy to voluntarily excuse themselves from the venire.

These arguments were recently addressed and rejected in *Howell v. State*, 882 P.2d 1086, 1089–1090 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1968, 131 L.Ed.2d 858 (1995). We therefore find the summoning of the venire panel was constitutional and this proposition of error has no merit.

### ISSUES RELATING TO
### GUILT/INNOCENCE

In his second, third, and fourth propositions Appellant contends the trial court erred in permitting Detective Mullenix to testify that Appellant made certain non-verbal reactions during questioning. Specifically, Appellant attacks two parts of Mullenix's testimony: (1) that, in response to the question whether he was really alone at decedent's apartment, Appellant trembled and dropped his head; and (2) that, in response to an accusation that he was guilty, Appellant nodded his head up and down. On direct examination the following exchange took place:

Q. Now with respect to the statement that [Appellant] made to you about being alone at the time that he went and changed [decedent's] flat and then went inside Lloyd Thompson's apartment, did you make any further inquiry about whether or not he had been in fact alone?

A. Yes. I then asked him again if he had been alone when he went to the victim's residence. When I said that I observed him to become visibly nervous. He trembled. His head—we had been making eye contact with each other and he dropped his head.

And when he did that I said, now come on, John, you and I both know that you

---

1. Woodruff's first conviction was reversed for failure to sever in *Woodruff*, 825 P.2d at 275. He

was retried separately, convicted, and sentenced to life without parole.

are guilty, and at that point he shook his head yes. Shook his head up and down and that terminated the interview.

(Tr. at 781–782, emphasis added).

Appellant argues the trial court erred in permitting this testimony because: (1) the trial court failed to determine adequately prior to Mullenix's testimony that Appellant's non-verbal reactions were adoptive admissions; (2) the testimony constitutes an improper comment on Appellant's silence; and (3) the testimony is more prejudicial than probative.

First, Appellant claims his non-verbal reactions are not admissible as non-hearsay adoptive admissions. 12 O.S.1981, § 2801(4)(b)(2). Appellant argues permitting Mullenix to testify to his non-verbal reactions without a specific finding by the trial court on the reliability of the evidence and without a limiting instruction violates his fifth, sixth and fourteenth amendment rights.

 The first part of Mullenix's testimony Appellant challenges is the statement: "[Appellant] trembled ... and he dropped his head." The ability of non-verbal conduct, in general, to act as an adoptive admission is not in question.[2] We first must determine whether such conduct is an assertion. A "statement," for hearsay purposes, includes "nonverbal conduct of a person, if it is intended by him as an assertion." 12 O.S.1981, § 2801(1)(b). An assertion is "a statement of truth, a positive declaration."[3] Appellant's actions in trembling and dropping his head are too vague and ambiguous to be assertions. We accordingly find these movements are not adoptive admissions. However, Mullenix could properly testify to his direct observations of Appellant's conduct in reaction to the questioning. 12 O.S.1981, § 2602. *Hager v. State*, 665 P.2d 319, 324 (Okl.Cr. 1983).

 The next part of Mullenix's testimony Appellant challenges is the statement Appellant nodded yes when asked if he were guilty. Nodding one's head in response to a question or accusation is commonly understood to convey agreement and can be an adoptive admission. *Gore*, 735 P.2d at 578; *Wright*, 535 P.2d at 319. Both Appellant and the State agree a nod may be an adoptive admission. Once Appellant's action is determined to be capable of being an adoptive admission we must determine the proper standard for admission of post-arrest custodial adoptive admissions made during police questioning.

Appellant urges this Court to impose stringent standards of admissibility similar to those used in *Village of New Hope v. Duplessie*, 304 Minn. 417, 231 N.W.2d 548, 551–553 (1975). The State argues once conduct is determined to occur after a defendant knowingly and voluntarily waives the right to remain silent it is admissible as an adoptive admission and any ambiguities as to the meaning of such conduct should be left to the jury.

 Oklahoma case law on adoptive admissions has almost exclusively addressed pre-arrest non-custodial silence or conduct.[4] In cases involving pre-arrest silence this Court has applied a three part test to determine whether such silence is admissible as an adoptive admission: (1) did the defendant hear the statement; (2) was the defendant capable of appreciating the statement in the context in which it was made; and (3) would a reasonable person, in the position of the defendant, protest the statement if he thought it were inaccurate or otherwise untrue. *Ryan*, 451 P.2d at 385. Other jurisdictions facing the issue of post-arrest custodial non-verbal adoptive admissions of police

2. *See State v. Kudron*, 816 P.2d 567, 569–571 (Okl.Cr.1991); *Gore v. State*, 735 P.2d 576, 578 (Okl.Cr.1987); *Wright v. State*, 535 P.2d 315, 319–320 (Okl.Cr.1975); *United States v. Joshi*, 896 F.2d 1303, 1312 (11th Cir.), *cert. denied*, 498 U.S. 986, 111 S.Ct. 523, 112 L.Ed.2d 534 (1990).

3. Black's Law Dictionary, 4th Ed., p. 149.

4. Oklahoma has long recognized pre-arrest silence may act as an adoptive admission. *See*

*Wauqua v. State*, 694 P.2d 532, 536 (Okl.Cr. 1985); *Cooper v. State*, 671 P.2d 1168, 1174 (Okl.Cr.1983); *Ryan v. State*, 451 P.2d 383, 385 (Okl.Cr.1969). This Court has also found pre-arrest non-verbal actions may act as adoptive admissions and evince guilty knowledge. *See Gore*, 735 P.2d at 578; *Wright*, 535 P.2d at 317–320.

questioning have applied analogous tests. *See Joshi*, 896 F.2d 1303. Because Appellant waived his right to remain silent and participated in the police interview, the issue of whether "clear and positive testimony" demonstrated that the head nod waived constitutional protection is not present. *See Kudron*, 816 P.2d at 571. Nor is there an issue whether a head nod could be an adoptive admission where an Appellant has not waived his right to remain silent. *See Ryan*, 451 P.2d at 385.

The trial court determined Appellant heard the accusation and appreciated the context in which it was made. By waiving his right to remain silent and participating in the interview Appellant could have either denied the accusation or become silent. That Appellant knew what his rights were and how to invoke them is evidenced by the fact that immediately after nodding his head he requested an attorney and the interview stopped. Moreover, defense counsel cross examined Mullenix about the head nod. Any ambiguity in its meaning was properly left to the jury to discern. Therefore, having applied the test prescribed in *Ryan*, we find Appellant's head nod was admissible as an adoptive admission. *Id.*

■■■■■■ In his third proposition of error Appellant contends Mullenix's testimony constituted an impermissible comment on his silence. Comments on a defendant's post arrest silence constitute reversible error. *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91, 98–99 (1976); *Morgan v. State*, 569 P.2d 474, 477 (Okl.Cr. 1977). However, we find Mullenix's testimony was not a comment on silence but rather was admissible as a personal observation of Appellant's actions and Appellant's adoptive admission. Moreover, even assuming Appellant is correct that the testimony necessarily incorporated the inference he remained silent and refused to answer Mullenix, the testimony would still be admissible. Appellant contends permitting Mullenix's testimony allowed the State to indirectly comment on that which it could not directly comment on—Appellant's post-arrest silence.

■■■■■■ However, this reasoning is flawed for three reasons. First, nothing prevents witnesses from testifying to a defendant's movements which are personally observed. 12 O.S.1991, § 2602. Second, when a defendant is advised of his *Miranda*[5] rights, and knowingly and voluntarily waives his right to remain silent, testimony of the defendant's subsequent refusal to answer questions is admissible. *Robedeaux v. State*, 866 P.2d 417, 432 (Okl.Cr.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 110, 130 L.Ed.2d 57 (1994). And third, if a defendant does not waive the right to remain silent he cannot be questioned, thereby precluding testimony his movements came in response to questions.

In this case, the trial court determined Appellant knowingly and voluntarily waived his right to remain silent when he agreed to speak with Mullenix. Because Appellant waived his right to remain silent and participated in the interview, Mullenix properly testified Appellant refused to answer these questions. We accordingly find Appellant's third proposition is without merit.

■■■■■■ In his fourth proposition of error Appellant contends the trial court erred in admitting Mullenix's testimony regarding Appellant's head nod because the prosecution treated it as a confession. Appellant's adoptive admission acted as a confession because, if believed by the jury, he admitted he was guilty of the murder. While a confession is highly prejudicial, the standard for admissibility is whether the confession was made voluntarily. *Hopper v. State*, 736 P.2d 538, 539–540 (Okl.Cr.1987). In the present case the trial court determined Appellant's adoptive admission was freely and voluntarily given. Moreover, defense counsel challenged the accuracy of Mullenix's observations on cross examination. Because the head nod was admissible, and because it was voluntary, we find it was not error for the prosecution to treat the nod as a confession and this proposition to be without merit.

■■■■■ Appellant claims in his fifth allegation the trial court erred in admitting a post arrest statement of his, the contents of which

---

**5.** *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726 (1966).

had been edited prior to admission. After he was arrested and placed in the police car Appellant volunteered two statements to Deputy Brown. The first of these statements was: "I'm fucked. I'll be going *back* to the pen this time." Deputy Brown testified Appellant said "I'm fucked. I'll be going to the pen this time." (Tr. at 828). Appellant argues the redacted statement is not relevant and fundamentally altered the meaning of the statement. The second statement was: "[Appellant] asked me the first time, even if he was guilty why did we have to take [Appellant's former girlfriend Tracy Burnett/Candelaria] in." Before the jury Brown testified "[Appellant] made one statement that even if he was guilty he didn't know why we had to take [Burnett/Candelaria] in." Appellant argues this statement is more prejudicial than probative because it is open to more than one interpretation.

■ At trial defense counsel moved to suppress the admission of Brown's testimony on the grounds that Appellant's statements were not voluntarily given. Where a defendant makes a specific objection at trial no different objections will be considered on appeal. *Simpson v. State*, 876 P.2d 690, 703 (Okl.Cr.1994). By failing to object at trial that his redacted statement was irrelevant and prejudicially altered, Appellant waives the issue. Therefore this Court will only review Appellant's present challenges for plain error. *Wilson v. State*, 871 P.2d 46, 48 (Okl.Cr.1994).

■ In post-arrest situations where *Miranda* warnings have not yet been given, a defendant's voluntary statements, not made in response to questioning, are admissible. *Miranda*, 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726; *Williams v. State*, 733 P.2d 22, 24 (Okl.Cr.1987). Where a trial court determines in a *Jackson v. Denno*[6] hearing that a statement was made voluntarily and not in response to police questioning this Court will not disturb the trial court's ruling when it is supported by sufficient evidence. *Barnett v. State*, 853 P.2d 226, 231

(Okl.Cr.1993). Before allowing Deputy Brown to testify the trial court conducted an *in camera* hearing to determine whether Appellant's statements were the result of post-arrest police inquiries or whether they were spontaneous unsolicited statements. The trial court concluded Appellant's statements were voluntary and not in response to police questioning. Therefore, the statements were properly admitted. Accordingly we find no plain error occurred.

### ISSUES RELATING TO EXPERT TESTIMONY

■ In his eighth proposition of error Appellant argues Captain Bevel improperly commented that Appellant must have been an active participant in the stabbing. He contends this eviscerated his defense and usurped the fact finding function of the jury as to the ultimate fact of Appellant's guilt or innocence. We note no objection was made as to either the acceptance of blood spatter evidence or as to the scope of this evidence. We therefore review only for plain error. *Hill v. State*, 764 P.2d 210, 212–213 (Okl.Cr. 1988).

■ Opinion evidence on ultimate issues is generally admissible. 12 O.S.1991, § 2704. However, the "otherwise admissible" language of § 2704 must be read in context with 12 O.S.1991, §§ 2403, 2701, 2702. *Hooks v. State*, 862 P.2d 1273, 1278 (Okl.Cr.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994). While expert witnesses can suggest the inferences which jurors should draw from the application of specialized knowledge to the facts,[7] opinion testimony which merely tells a jury what result to reach is inadmissible. *Hooks*, 862 P.2d at 1278.

■ Bevel's testimony was based upon his examination of photographs and bloody clothing. In his testimony Bevel indicated the spatters in the photographs and on Appellant's clothing were consistent with the theory that the wearer of the clothes was in very close proximity to decedent and may

---

6. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

7. *Moore v. State*, 788 P.2d 387, 399 (Okl.Cr.), *cert. denied*, 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 182 (1990).

have participated in the stabbing. We find this portion of Bevel's testimony is not improper expert opinion on the ultimate issue of Appellant's guilt. Rather, it is admissible expert testimony based on facts or data of a type reasonably relied upon by experts in the field of blood spatter analysis when forming opinions. *See* 12 O.S.1991, § 2703; *McCarty v. State*, 765 P.2d 1215, 1218 (Okl.Cr.1988). Moreover, on cross examination defense counsel attacked the imprecision of Bevel's analysis and elicited from Bevel that he did not visit the murder scene, did not talk with the medical examiner, did not make a report of his conclusions, did not determine the heights of decedent or either Appellant or Woodruff, was unable to say with certainty that Appellant was within eighteen to twenty-four inches of decedent, was unable to state that Appellant actually stabbed decedent, and could find the blood spatter evidence and knife wounds consistent with the theory that Woodruff held and stabbed decedent alone. Defense counsel's attempts to expose the imprecision of Bevel's conclusions on cross examination cured any error which may have resulted. *Fox v. State*, 779 P.2d 562, 571–572 (Okl.Cr.1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990).

 The testimony to which Appellant most strongly objects came at the very end of Bevel's testimony just before the State rested. The prosecutor's final questions on re-direct examination and Bevel's answers were:

> Q. Now with respect to the medium velocity blood spatter that we see on the right sleeve of this garment, State's Exhibit Number 39, is there anything inconsistent with what you see there with this person being the one doing the stabbing?
>
> A. There is nothing inconsistent with that, no, sir.
>
> Q. Is that what you would expect to see if that person had in fact done the stabbing?
>
> A. Yes, sir.
>
> Q. **In your opinion, sir, based upon your education, training and experience and your observation of State's**

**Exhibit Numbers 39, the shirt and 38 the jeans, was the person wearing these garments a passive observer of this stabbing?**

A. No, sir.

(O.R. at 874–75, emphasis added).

We find Bevel's first two answers, as set forth above, are proper blood spatter expert opinion evidence. Both answers are reasonable inferences drawn from the application of Bevel's specialized knowledge to the facts of this case.

██ However, Bevel's last response was error because it overstepped the bounds of proper blood spatter expert opinion and constitutes prejudicial personal opinion. As noted above, Bevel's testimony until the last question and answer presented strong circumstantial evidence that Appellant stabbed decedent. Bevel's final answer removed this last inferential step and the jury's fact finding function by effectively telling the jury Appellant murdered decedent. *Compare with Hogan v. State*, 877 P.2d 1157, 1161 (Okl.Cr.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1154, 130 L.Ed.2d 1111 (1995); *and Fox*, 779 P.2d at 570 (holding blood spatter experts properly testified as to the location, order and method of killings in cases where the experts did not testify to the defendants' role in the crimes); 12 O.S.1991, § 2702. It is one thing to say a defendant is in close proximity to a violent attack and quite another to state definitely a defendant participated in the attack. When this is done, the expert's opinion is effectively transformed from circumstantial to direct evidence. Because Bevel's opinion overstepped the proper bounds of blood spatter evidence his answer constitutes a personal opinion of Appellant's guilt. Bevel's personal opinion does not assist the jury in concluding Appellant stabbed decedent. 12 O.S.1991, § 2701. Further, admission of Bevel's personal opinion is more prejudicial than probative because it carries the substantial weight and credibility of an expert opinion. 12 O.S.1991, § 2403; *Fox*, 779 P.2d at 571. Finally, the prosecutor's final question was error under *Moore* because it invited Bevel to express his personal opinion of Appellant's guilt.

Nevertheless, error resulting from the prosecutor's improper question and Bevel's answer was not a substantial violation of Appellant's rights nor did the error produce a miscarriage of justice, rendering the error harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710 (1967); *Fontenot v. State*, 881 P.2d 69, 85 (Okl.Cr.1994). In opening statement defense counsel told the jury their only question to answer was whether Appellant or Woodruff stabbed decedent. Ollie Irvin testified she saw decedent watching another man change his tire, saw them walk to the stairs and heard loud music and banging less than two minutes later. Diana Wickham testified she saw two men watching a third change a tire on decedent's car. Mullenix testified Appellant admitted he was inside decedent's apartment the morning of the murder after changing his tire.

In his testimony at the first trial, read to the jury, Powell testified he saw one man in the Burnett/Candelaria's Cougar and one man coming down the stairs in a hurry with a brown bag, a cloth, a ball cap and a moustache who got in and drove the car away. He also testified loud music was coming from decedent's apartment. Kendall Butler witnessed police recover two knives and bloody clothing from a dumpster behind a Sound Warehouse store between Rockwell and MacArthur on Northwest Expressway. Roger Paul Montgomery testified he recovered the knives and clothing, including a pair of pants with Appellant's name on them, later introduced as State's Exhibit No. 38.

Ronald Wortham testified he photographed wounds to Appellant's right little finger and a scratch on his neck when he interviewed Appellant in Clovis, New Mexico. Bevel testified he would expect an attacker who repeatedly stabbed a victim would receive injuries to his small finger. Robert Newman testified he took possession of Appellant's bloody tennis shoes the day after the murder and had them delivered to police in Oklahoma City. Mullenix and Brown tes-

tified Appellant made incriminating gestures and statements after he was arrested. Finally, defense counsel conceded Appellant changed decedent's tire and went to his apartment afterwards but argued Appellant was merely a passive observer while Woodruff murdered decedent.

The final exchange between the prosecutor and Bevel was the last evidence presented by the State and Appellant did not present any evidence in the first stage. Moreover, the prosecutor emphasized Bevel's final answer to the jury in closing argument. Therefore, it cannot be said the jury did not consider this answer in their deliberations. However, the other evidence clearly supports the inference Appellant was present at and participated in stabbing decedent. Therefore, it cannot be said Bevel's final answer determined the verdict. *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710.

In his ninth proposition of error Appellant claims the entirety of Bevel's testimony is inadmissible. He contends, for the first time on appeal, that blood spatter analysis is not a proper subject for expert scientific testimony because it does not pass the *Frye*[8] test. He argues this Court has never subjected blood spatter analysis to the *Frye* test to determine whether such testimony is grounded in scientific proof or is generally accepted by the scientific community. He further argues even if blood spatter analysis is a proper subject for expert testimony Bevel was not properly qualified as an expert and failed to properly examine all available evidence. He finally argues that under the admissibility standard of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, ⸺ U.S. ⸺, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), Bevel's testimony is inadmissible because his methodology is faulty.

We held blood spatter analysis is a proper subject for expert testimony in *Farris v. State*, 670 P.2d 995, 997–998 (Okl.Cr.1983), and we have consistently upheld this decision.[9] Appellant's first two challenges are without merit.

---

**8.** *Frye v. United States*, 293 F. 1013 (App.D.C. 1923).

**9.** *See Hogan*, 877 P.2d at 1161; *Trice v. State*, 853 P.2d 203, 213 (Okl.Cr.1993), *cert. denied*, ⸺ U.S. ⸺, 114 S.Ct. 638, 126 L.Ed.2d 597 (1993);

Appellant's third challenge is likewise without merit. Bevel testified at length about his qualifications and the wide acceptance of blood spatter analysis. Moreover, this Court has found Bevel qualified to testify as a blood spatter expert. *Farris*, 670 P.2d at 997–998.

■ This Court explicitly abandoned *Frye* and adopted *Daubert* in *Taylor v. State*, 889 P.2d 319, 328–29 (Okl.Cr.1995). However, we will not apply the *Daubert* analysis retroactively to scientific subjects previously accepted as valid for expert testimony. Because Bevel was qualified to testify as a blood spatter expert, any challenge to his examination of exhibits and methodology goes to his credibility and is properly left to the jury to decide what weight to give his testimony. *Dennis v. State*, 879 P.2d 1227, 1231 (Okl.Cr.1994); *Pierce v. State*, 786 P.2d 1255, 1260 (Okl.Cr.1990). Because the record in the present case supports the jury's conclusion, we will not substitute our findings for those of the jury. *Pierce*, 786 P.2d at 1260. Moreover, defense counsel vigorously attacked Bevel's examination of exhibits and his conclusions, thereby placing his methodology at issue. *Dennis*, 879 P.2d at 1231.

In his tenth proposition of error Appellant claims the trial court erred in permitting Janice Davis to testify to the "puzzle fit" of the blade found under decedent and the knife found in the dumpster and to her testimony regarding blood typing. He further claims Davis ignored facts which could have supported a finding of Appellant's blood on some items and thereby supported his defense. He claims by ignoring such evidence Davis lost her objectivity and acted as a prosecutor.

■ At trial Appellant objected only to the reading of Davis's testimony from Appellant's first trial because she was unavailable. When a specific objection is made at trial no different objections will be considered on appeal. *Simpson*, 876 P.2d at 703. By failing to object at trial to the subject matter of Davis' testimony or her qualifications to testify as an expert Appellant did not properly

preserve this issue on appeal. Therefore we only review Appellant's present challenges for plain error. *Wilson*, 871 P.2d at 48.

■ We have previously recognized blood typing as a proper subject for expert testimony. *Plunkett v. State*, 719 P.2d 834, 840 (Okl.Cr.), *cert. denied*, 479 U.S. 1019, 107 S.Ct. 675, 93 L.Ed.2d 725 (1986). Davis testified to her qualifications and education. Appellant fails to prove the trial court abused its discretion in qualifying Davis as an expert in blood typing. Appellant's first two arguments are without merit.

■ Davis' testimony on the match or "puzzle fit" between the blade fragment found beneath decedent and the broken knife found in the dumpster was admissible personal opinion evidence. Davis was not offered as an expert in this field. She testified she magnified the knife to show how the pieces fit together. This evidence is not beyond the understanding of the jurors. While Davis used a special piece of equipment to photograph the pieces and some technical terms in her descriptions of the photographs, the jury, once furnished with the magnified photographs, could decide for themselves whether the blade and knife matched. Davis' testimony was rationally based on her own perceptions. 12 O.S.1991, § 2701(1). Her testimony was also helpful to show how she took the photographs and the markings to examine when comparing the blade and the knife. 12 O.S.1991, § 2701(2).

■ In his first proposition of error Appellant claims he was prejudiced by the admission of hearsay statements made by Woodruff as testified to by Woodruff's former girlfriend Denise Howe. He claims the statements were inadmissible hearsay not within the co-conspirator hearsay exclusion. 12 O.S.1991, § 2801(4)(b)(5). He argues Woodruff's statements were made during a unilateral search by Woodruff and Howe for the bloody clothing prior to a phone call from Appellant after his arrest. Accordingly he argues the dumpster search and statements were made after the conspiracy to rob and

*Clayton v. State*, 840 P.2d 18, 28 (Okl.Cr.1992), *cert. denied*, 507 U.S. 1008, 113 S.Ct. 1655, 123

L.Ed.2d 275 (1993).

murder decedent terminated and therefore cannot be ascribed to the conspiracy.

■ After an *in camera* hearing to determine the admissibility of Howe's testimony the following exchange took place on direct examination:

Q. Ms. Howe, as we stated before the brief recess, what else that morning besides receiving the phone call did you do or had you done?

A. We got in the car and drove and [Woodruff] looked inside trash dumpsters.

Q. And do you know when in relation to the phone call or calls you received from New Mexico was this?

A. **It was before.**

. . . . .

Q. At the time you went did you know why you were looking in dumpsters?

. . . . .

A. **[Woodruff] finally told me that we were looking for clothes.**

Q. All right. Did he say anything else about these clothes?

A. **That they had gotten messed up.**

. . . . .

Q. Did he make any statement about the person who placed them in there?

A. Yes, he did.

Q. What would that be?

A. **That the person that was to get rid of them wasn't very smart.**

(Tr. at 692–695, emphasis added).

Woodruff's statements, as related by Howe, are hearsay. In an effort to prove that Woodruff acted at Appellant's direction to recover the bloody clothing the State offered the first two statements to prove the truth of the matter asserted: that Woodruff was looking for "messed up" clothes. While the third statement was not offered to prove Appellant "wasn't very smart," it was offered to prove Appellant previously disposed of the clothing. The admissibility of this evidence therefore turns on whether the statements can be characterized as "statements by a co-conspirator of a party during the course and in furtherance of the conspiracy." 12 O.S. 1991, § 2801(4)(b)(5).

■ Absent evidence to the contrary a robbery/murder conspiracy will terminate with the robbery and murder. *See Jones v. State*, 738 P.2d 525, 527 (Okl.Cr.1987). In the present case Woodruff's statements would be admissible only if his actions were in response to Appellant's directive to recover and dispose of the clothing. *Mann v. State*, 749 P.2d 1151, 1158 (Okl.Cr.1988), *cert. denied*, 488 U.S. 877, 109 S.Ct. 193, 102 L.Ed.2d 163 (1988).

The trial court correctly found, pursuant to *Armstrong v. State*, 811 P.2d 593, 597–598 (Okl.Cr.1991), that by a preponderance of competent evidence a conspiracy to rob and murder decedent was proved, and that Appellant and Woodruff were members of the conspiracy. The trial court regarded Woodruff's statements co-conspirator non-hearsay and stated:

> This is a [*Mann v. State* ] situation to the extent that there is evidence in this record indicating the acts by Woodruff were done as a reaction to the telephone call by [Appellant].

. . . . .

> I think they are done by a coconspirator in the furtherance of the conspiracy related to the offense against [decedent].

(Tr. at 677).

■ This finding was predicated on the necessity of Woodruff's actions coming in reaction to Appellant's phone call. However, Howe's testimony both *in camera* and before the jury clearly shows Woodruff acted prior to any contact with Appellant and obviates a finding of continuing conspiracy. The statements were not made in furtherance of the conspiracy. However, any error was harmless. Howe could and did testify to her personal actions and observations. The clothes were found shortly after the murder in a dumpster in the area where Woodruff and Howe searched. The clothes were worn by Appellant and Woodruff at the murder scene. Given the overwhelming evidence of guilt this error was harmless in the first stage. Sufficient other evidence also exists

to support the aggravating circumstance of "avoid arrest" in the second stage absent this evidence. This evidence did not produce a miscarriage of justice in either the first or second stages of trial. *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710; *Fontenot*, 881 P.2d at 85.

## ISSUES RELATING TO ADMISSION OF PHOTOGRAPHS

In his thirteenth proposition of error Appellant argues the trial court erred by admitting six photographs, State's Exhibit Nos. 7, 9, 19–22, into evidence because the exhibits are cumulative and gruesome. He further argues Exhibit Nos. 19–22 are duplicative of State's Exhibit No. 8.

Exhibit Nos. 7 and 9 depict the couch where the blade was found and defensive wounds to decedent's hand, respectively. Both were admitted during the first stage over defense counsel's objection. Exhibit Nos. 19–22 depict various wounds to decedent's face, neck, torso and back of neck, respectively. They were admitted in the second stage of trial over defense counsel's objection. Exhibit No. 8 depicts decedent as he was found. It was admitted in first stage with no objection.

The decision to admit photographs is within the sound discretion of the trial court and will be disturbed only upon a showing of abuse of discretion. Further, photographs are admissible if they are relevant and their probative value is not outweighed by their prejudicial effect. *McCormick v. State*, 845 P.2d 896, 898 (Okl.Cr.1993) (*quoting Lampkin v. State*, 808 P.2d 694 (Okl.Cr.1991)). Photographs which accurately depict the victim as found by police and depict the nature and extent of wounds are relevant. *Crawford v. State*, 840 P.2d 627, 636 (Okl.Cr.1992). The gruesome nature of photographs does not of itself render them inadmissible. *Revilla v. State*, 877 P.2d 1143, 1151 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 764, 130 L.Ed.2d 661 (1995). In addition, photographs which accurately depict the result of the defendant's actions or the condition of the deceased will not be inadmissible simply because they are gruesome. *Bryson v. State*, 876 P.2d 240, 258

(Okl.Cr.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995); *Hogan*, 877 P.2d at 1163.

In the present case all the exhibits of which Appellant complains are relevant. Exhibit Nos. 7 and 19–22 accurately depict the nature, extent and location of decedent's wounds, including defensive wounds. They also corroborate the testimony of John McCormack, the officer who investigated the scene and took the photographs, and Balding, the medical examiner who conducted the autopsy. Exhibit No. 9 accurately depicts the crime scene and corroborates McCormack's testimony. While Exhibit Nos. 20 and 21 can be characterized as gruesome, they accurately depict the result of Appellant's actions and the condition of decedent. The probative value of Exhibit Nos. 7, 9, 19–22 is not substantially outweighed by the danger of unfair prejudice. Further, the trial court did not abuse its discretion in admitting the exhibits.

Finally, Exhibit Nos. 19–22 are not duplicative of Exhibit No. 8. Exhibit No. 8 shows decedent's location on the blood soaked couch. No wounds are visible in the exhibit. Exhibit Nos. 19–22 present much more, and different, information to the jury. This argument is without merit.

## ISSUES RELATING TO PROSECUTORIAL MISCONDUCT

In his twelfth proposition Appellant contends prosecutorial misconduct throughout the trial denied him a fair trial. Appellant cites several instances of alleged prosecutorial misconduct which he argues warrant reversal because: (1) the evidence of Appellant's active participation in the murder is not overwhelming; (2) the important considerations of second stage were skewed; and (3) Woodruff received a lesser sentence.

Appellant's first challenge centers on the admission of evidence that he had been tried once before for the present murder. Throughout trial the trial court ordered that no mention be made that Appellant had previously been tried for this murder. Nevertheless Appellant cites three instances

where he alleges the prosecutor presented evidence of Appellant's prior trial: (1) using the word "trial" while reading Powell's testimony; (2) double tagging certain exhibits with exhibit stickers; and (3) eliciting testimony in second stage about the first trial.

The trial court allowed the prosecutor to read Powell's testimony after finding he was unavailable. Apparently, when the testimony was read the prosecutor said "on the previous trial this [exhibit] was marked State's Exhibit 6." (Tr. at 504, 506). Defense counsel objected to the use of the word "trial" and moved for a mistrial. The trial court ruled that the mention of the word "trial" in this instance did not prejudice Appellant and denied the motion for mistrial. Appellant fails to cite specific and relevant authority. We have held similar references to a first trial harmless error because they did not tell the jury anything they did not already know. *Wingfield v. State*, 205 P.2d 320, 325 (Okl.Cr.1949), *overruled on other grounds in Hommer v. State*, 657 P.2d 172 (Okl.Cr.1983). In the present case the jury was well aware a prior "proceeding" had occurred. They were presented with witnesses, in person and via transcript, to a crime several years old and with evidence that some exhibits had been admitted in the earlier "proceeding."

■ Upon retrial a defendant is placed in the same position as if tried for the first time. 21 O.S.1991, § 951. When a violation of § 951 is alleged to occur the pertinent question is whether the defendant received a fair retrial. If a capital jury's sense of responsibility is reduced a defendant has not received a fair trial. *Caldwell v. Mississippi*, 472 U.S. 320, 328–329, 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231, 239 (1985). In the present case Appellant was not prejudiced by the single use of the word "trial." There was overwhelming evidence of guilt to support the jury's verdict. Moreover, the jury carefully and conscientiously reached its decision in the second stage. Nor did double tagging of two exhibits prejudice Appellant. The jury was aware of a prior "proceeding" and nothing indicated these exhibits were used in a trial as opposed to another proceeding.

Finally, Howe's identification, in second stage, of a rope "presented at trial" was not prejudicial. The jury had already found Appellant guilty. Further, the jury's decision in second stage is supported by overwhelming evidence of both aggravating circumstances found. While these allusions to the fact Appellant had been previously tried for the murder of decedent may have violated the trial court's ruling[10] any error is harmless.

■ Next, Appellant complains the prosecutor impermissibly defined "beyond a reasonable doubt" to the jury. He further argues the prosecutor improperly claimed the evidence against Appellant was uncontradicted. Appellant complains of two statements by the prosecutor during first stage closing:

> Before I—in those elements, and it is only those four elements that we must prove beyond a reasonable doubt, not beyond all doubt although in this case I submit to you there is no question and we have proven, taken our case one step further and proven to you that [Appellant] and [Woodruff] killed [decedent] beyond any doubt.

(Tr. at 879).

> And when you examine the evidence, talk about it a (sic) amongst yourselves, ladies and gentlemen, there is no doubt, we have shown beyond any doubt that on July 19th, [Woodruff] and [Appellant] went to the Kay–Keil apartments with one purpose and one purpose only and that was to rob and murder [decedent].

(Tr. at 896).

■ Neither of these comments was met with an objection. Because defense counsel did not object to either of the comments, all but plain error is waived. *See Crawford*, 840 P.2d at 641. We look at the entire record to determine whether the cumulative effect of improper comments by the prosecutor prejudiced Appellant, constituting plain error. *See Brown v. State*, 777 P.2d 1355, 1358 (Okl.Cr.1989); *Carol v. State*, 756 P.2d 614, 618 (Okl.Cr.1988).

■ It is error for any party to try to define "beyond a reasonable doubt." *Tho-*

10. *See Luna v. State*, 829 P.2d 69, 71 (Okl.Cr. 1992).

mason v. State, 763 P.2d 1182, 1183 (Okl.Cr. 1988). However, contrasting "reasonable doubt" to terms like "no doubt" or "all doubt" is not erroneous. *Id.* As noted by Appellant the prosecutor's comments are more properly characterized as describing the evidence as uncontradicted.

A statement that the evidence is uncontradicted is not, standing alone, error. *Rowbotham v. State,* 542 P.2d 610, 620 (Okl. Cr.1975), *modified,* 428 U.S. 907, 96 S.Ct. 3218, 49 L.Ed.2d 1215 (1976), *modified,* 554 P.2d 814 (Okl.Cr.1976). When no evidence is offered by the defendant, it is proper to comment on the uncontradicted evidence. *Pickens v. State,* 751 P.2d 742, 744 (Okl.Cr. 1988). In closing argument both the State and the defendant have the right to freely discuss the evidence from their respective viewpoints. *McCaulley v. State,* 750 P.2d 1124, 1128 (Okl.Cr.1988). We have consistently held it is not improper for either counsel to argue that evidence is uncontroverted or uncontradicted. *Pickens,* 751 P.2d at 744; *Sims v. State,* 744 P.2d 193, 196 (Okl.Cr. 1987).

After review of the entire record we have found none of the statements were prejudicial nor did they adversely affect the fundamental fairness of the trial. *Pickens v. State,* 850 P.2d 328, 343 (Okl.Cr.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994). Appellant presented no evidence in the first stage of trial. Defense counsel admitted Appellant was present at the murder scene. On cross examination of State witnesses he tried to show Woodruff was the stabber while Appellant watched. Appellant fails to prove plain error resulted from these two comments.

In his next challenge Appellant claims the prosecutor misstated the evidence. He claims the failure to substantiate the opening statement claim the phone call preceded Woodruff's and Howe's dumpster search was based on the prosecutor's bad faith and warrants reversal. Failure of the prosecutor to prove all remarks made in opening statement is error only upon proof of bad faith and prejudice. *Shultz v. State,* 811 P.2d 1322, 1328 (Okl.Cr.1991). Appellant claims bad faith is apparent because: (1) the

prosecutor was intimately familiar with the issues and testimony in the case; (2) the prosecutor knew the substance of Howe's testimony and the time the phone call was made; and (3) the prosecutor had been familiar with the case for six years.

Appellant fails to show either bad faith on the part of the prosecutor or prejudice. First, the record shows the prosecutor believed Howe's testimony would show the search was subsequent to, and in reaction to, Appellant's phone call. The fact Howe testified differently does not prove the prosecutor presented her testimony in bad faith. Second, as noted above, Appellant suffered no prejudice from the admission of Woodruff's hearsay statements.

Appellant next contends the prosecutor improperly sought to inflame the jury by comparing the Sarfaty murder to the present murder. Appellant claims this was irrelevant commentary calculated to inflame the jury. In second stage opening statement the prosecutor, after describing the Sarfaty murder, asked the jury "[d]oes it sound like you have been here before?" Defense counsel objected and the trial court sustained the objection. Defense did not request an admonition.

Normally, when an objection is sustained any error is cured. *Shelton v. State,* 793 P.2d 866, 871 (Okl.Cr.1990). To properly preserve any error which could be cured at trial the defendant must object and request the trial court to admonish the jury. *White v. State,* 726 P.2d 905, 907 (Okl.Cr. 1986), *cert. denied,* 485 U.S. 907, 108 S.Ct. 1080, 99 L.Ed.2d 239 (1988). Because this alleged error was not properly preserved for appeal, review is limited to plain error. *Parks v. State,* 651 P.2d 686, 693 (Okl.Cr. 1982), *cert. denied,* 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983). This comment was not so prejudicial as to adversely affect the fundamental fairness of the trial. *Pickens v. State,* 850 P.2d at 343. Further, in opening statement the prosecutor is entitled to inform the jury what the State intends to prove with the evidence to be presented. *Newsted v. State,* 720 P.2d 734, 738 (Okl.Cr.), *cert. denied,* 479 U.S. 995, 107 S.Ct. 599, 93

L.Ed.2d 599 (1986). Pointing out the similarities of two very similar murders is well within the scope of opening argument. Moreover, the evidence presented supported the comparison. This argument is meritless.

■ Next, Appellant claims the prosecutor presented facts not in evidence when he asked a second stage witness:

Now if somebody had Mr. Sarfaty tied up based on the ligature marks that you found to his wrists and to his feet, if they had him tied up and were trying to get information from him such as where are your diamonds or your valuable rings, that kind of information, would the placement that they have on him and the ligature mark that you found to his neck, would that be consistent with someone exerting force for a period of time and then possibly letting or easing up on that force to try and get information out if him?

(Tr. at 1038).

Defense counsel objected that the question called for speculation. The trial court responded "[t]he objection is overruled. She is qualified to give that opinion." (Tr. at 1039).

■ Whether to allow a hypothetical question is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *Boutwell v. State*, 659 P.2d 322, 327 (Okl.Cr.1983); *McBirney v. City of Tulsa*, 505 P.2d 1403, 1406 (Okl.Cr. 1973). Where ample evidence exists to support the hypothetical question this Court will not find abuse of discretion. *Id.* Normally, a hypothetical question on direct examination is sufficient if it fairly states such facts in evidence as are relevant and material and sufficient to allow an expert to form an accurate opinion. *Wofford v. State*, 584 P.2d 227, 229 (Okl.Cr.1978). However, it is error to present a hypothetical question which assumes facts not previously presented in evidence. Any resulting error, though, is cured by cross examination which exposes inaccuracies. *Id.*

■ In the present case evidence was presented, prior to the hypothetical question, of ligature marks and bruises to Sarfaty's face. However, no evidence was presented of what Sarfaty may have said or that he had bruises on his back. On cross examination defense counsel asked:

Q. Now when the prosecutor was asking you about is the ligature marks consistent with somebody putting his knee on his back and asking him about jewelry and all of that, you don't know that, do you, what he was being asked about even if he indeed was being asked anything.

A. No, sir.

Q. You don't know any facts about this case other than what you did on the autopsy?

A. That's—you're correct.

Q. You don't know if jewelry was involved or money or cash. You don't know the reason why he was killed, do you?

A. That's not my matter, no, sir.

(Tr. at 1042).

This hypothetical question was error as it related to the manner in which Sarfaty may have been questioned and his possible responses. However, the error was cured on cross examination.

■ Finally, Appellant claims the combination of the prosecutor's comments and inadequate rulings by the trial court caused him irreparable harm necessitating reversal. He bases this argument on the fact Woodruff received a lesser sentence on substantially the same facts and the claim the evidence against Appellant was not overwhelming. Appellant fails to cite any authority to support his accusations against the trial court. Absent plain error we will not address assertions unsupported by legal authority. *Kennedy v. State*, 640 P.2d 971, 980 (Okl.Cr.1982). Further, disparity between sentences is not evidence of error. *Lamb v. State*, 756 P.2d 1236, 1238 (Okl.Cr.1988). This argument is without merit.

## ISSUES RELATING TO PUNISHMENT

### A. ISSUES RELATING TO OKLAHOMA'S DEATH PENALTY STATUTES

■ In his eleventh proposition of error Appellant contends the State was barred, by

collateral estoppel, from presenting evidence of the Sarfaty murder in the second stage. The evidence of the Sarfaty murder presented by the State was nearly identical to the evidence presented at the first trial.[11] He claims that because the jury in the first trial did not find this "continuing threat" the State could not present the same evidence to try to establish this aggravator in his second trial.

Double jeopardy does not preclude the State from seeking the death penalty a second time where the first jury sentenced Appellant to death. *Compare Poland v. Arizona,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986) *with Arizona v. Rumsey,* 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984) and *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). Nor is the State in this case precluded from alleging the aggravating circumstance of "continuing threat" and presenting evidence to support it. *Poland,* 476 U.S. at 156–157, 106 S.Ct. at 1756, 90 L.Ed.2d at 133. *See also Green v. State,* 759 P.2d 219, 222 (Okl. Cr.1988) (prior conviction properly used to enhance punishment at second trial where jury did not use conviction to enhance sentence at first trial). Appellant concedes this point but argues that the State is precluded by collateral estoppel from presenting the same evidence which the first jury rejected. He argues that even though the jury again rejected the aggravating circumstance of "continuing threat," he was prejudiced by the sheer volume of evidence presented by the State.

Because the jury in the present case rejected this aggravator Appellant's collateral estoppel argument on "continuing threat" is moot. Nor was Appellant prejudiced by the overall effect of presenting this evidence. The jury carefully and conscientiously considered and applied the evidence in aggravation and mitigation. They rejected the aggravating circumstance of "continuing threat" in the face of much evidence. As noted below, the jury's finding of the aggravating circumstances of "heinous, atrocious or cruel" and "avoid arrest" are supported by sufficient evidence exclusive of the Sarfaty murder evidence.

In his sixteenth proposition of error Appellant claims insufficient evidence of decedent's conscious physical suffering existed to support the jury's finding of the aggravating circumstance of "heinous, atrocious or cruel."[12] He argues that because Balding could not determine with certainty whether decedent remained conscious after the first blow any finding of conscious physical suffering would be merely speculative. Specifically, he argues the knife wound which severed decedent's spinal cord may have been the first wound inflicted and may have rendered decedent either unconscious or numb prior to the other wounds.

To support a finding of this aggravating circumstance the State must prove conscious serious physical abuse or torture prior to death. *Revilla,* 877 P.2d at 1155; *Crawford,* 840 P.2d at 640; *Nuckols v. State,* 805 P.2d 672, 674 (Okl.Cr.), *cert. denied,* 500 U.S. 960, 111 S.Ct. 2276, 114 L.Ed.2d 727 (1991). Even if decedent could not actually feel the wounds inflicted, if he were conscious and aware of the attack this would support a finding of torture. *Berget v. State,* 824 P.2d 364, 373 (Okl.Cr.1991), *cert. denied,* 506 U.S. 841, 113 S.Ct. 124, 121 L.Ed.2d 79 (1992); *Hogan,* 877 P.2d at 1163. When a jury finds an aggravating circumstance exists, we must view the evidence supporting the aggravating circumstance in the light most favorable to the State on appellate review. *Bryson,* 876 P.2d at 259; *Romano v. State,* 847 P.2d 368, 387 (Okl.Cr.1993), *aff'd,* — U.S. —, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994).

In the present case sufficient evidence exists to support such a finding. Decedent had defensive wounds and may have fought with Appellant and Woodruff. Appellant's neck was scratched between the time of the attack and when Burnett/Candelaria next saw him. Decedent's living room was torn up and Irvin

---

11. The only differences between the evidence presented at the two trials are that Thomas Ferris' testimony was read to the jury and came as the tenth rather than the fifth witness, and Jerry Jones and Dianna Myles did not testify in the instant trial.

12. 21 O.S.1991, § 701.12(4).

testified she heard between two to ten minutes of loud banging. All of decedent's wounds were ante-mortem and Balding testified that even with a severed spinal cord decedent would remain conscious for a few minutes and would know he was being stabbed even though he could not feel pain.

In his nineteenth proposition Appellant claims the evidence is insufficient to support the jury's finding of the aggravating circumstance of "avoid arrest or prosecution." [13] He further argues this aggravating circumstance is unconstitutional as applied because this Court has never overturned a finding of this aggravating circumstance.

To support a finding of this aggravating circumstance there must be a predicate crime, separate from the murder, for which the defendant seeks to avoid arrest or prosecution. *Barnett*, 853 P.2d 226, 233. Central to proof of the predicate crime is the defendant's intent. *Stouffer v. State*, 738 P.2d 1349, 1361–1362 (Okl.Cr.1987), *cert. denied*, 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988); *Banks v. State*, 701 P.2d 418, 426 (Okl.Cr.1985). We have consistently held a defendant's intent can be inferred from circumstantial evidence. *Snow v. State*, 876 P.2d 291, 299 (Okl.Cr.1994) *cert. denied*, — U.S. ——, 115 S.Ct. 1165, 130 L.Ed.2d 1120 (1995). We will review circumstantial evidence to determine whether any reasonable hypothesis exists other than the defendant's intent to commit the predicate crime. *Id.*

In the present case the predicate crime for which Appellant is alleged to have murdered in order to avoid prosecution is robbery. Sufficient circumstantial evidence exists to exclude any reasonable hypothesis except that Appellant murdered decedent to avoid arrest or prosecution for the underlying robbery. Mullenix testified Appellant said he knew decedent. Tony Hill and Tracy Greggs testified Appellant knew decedent well and knew decedent carried large sums of money. Further, other evidence supports the inference Appellant planned and participated in the robbery and murdered decedent because he could identify Appellant.[14]

Appellant's second challenge is also without merit. The application of this aggravating circumstance is sufficiently narrowed where the impetus for the murder is avoiding arrest or prosecution for the underlying crime. *Barnett*, 853 P.2d at 233. Furthermore, contrary to Appellant's assertion, we have found the evidence insufficient to support this aggravating circumstance in at least two cases. *See Snow*, 876 P.2d at 299; *Barnett*, 853 P.2d at 233. This aggravating circumstance is not being applied in an *ad hoc* or catch-all manner.

In his next challenge Appellant claims Oklahoma's scheme for applying and reviewing aggravating circumstances is unconstitutional. He presents three arguments in support of his claim: (1) the jury's finding of both aggravating circumstances was erroneous because the second stage instructions prevented adequate consideration of Appellant's mitigating evidence; (2) this Court's procedure to reweigh mitigating and aggravating evidence where one or more aggravating circumstances are held invalid deprives defendants of their due process right to jury sentencing; and (3) failure of the jury to specifically memorialize which mitigating evidence they considered precludes adequate appellate weighing or reweighing of mitigating and aggravating evidence.

We find Appellant's first challenge has no merit.[15] Appellant's second challenge is likewise without merit. We have repeatedly upheld the reweighing procedure where aggravating circumstances are held invalid. *See Malone v. State*, 876 P.2d 707, 718–719 (Okl. Cr.1994); *Trice*, 853 P.2d at 222.

In Appellant's third challenge he claims the jury's failure to memorialize specific findings of fact as to which mitigating evidence they considered precludes adequate appellate review. Where aggravating circumstances are upheld we must conduct a mandatory sentence review to determine: (1)

---

**13.** 21 O.S.1991, § 701.12(5).

**14.** *See* discussion of Proposition VII, *supra*.

**15.** This is addressed *infra* in the discussion of Propositions XXII–XXV.

whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; and (2) whether the evidence supports the jury's finding of aggravating circumstances. 21 O.S.1991, § 701.13(C). When conducting this review we examine the entire record to discern all arguably mitigating evidence. We conduct the same review where aggravating circumstances are invalidated. *Malone,* 876 P.2d 707, 718 (Okl.Cr.1994). This procedure ensures a careful review of the entire record and consideration of all arguably mitigating evidence. Requiring juries to memorialize which mitigating evidence they considered may work to the disadvantage of defendants.[16] Accordingly we hold this proposition has no merit.

■ In his twenty-eighth proposition Appellant contends no standards or procedures exist to guide prosecutors in seeking the death penalty or to prevent them from seeking the death penalty in an arbitrary or capricious manner in violation of *Gregg v. Georgia,* 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859, 883 (1976). He urges us to adopt the reasoning of the District Court in *Silagy v. Peters,* 713 F.Supp. 1246, 1258 (C.D.Ill.1989), *aff'd in part, rev'd in part,* 905 F.2d 986 (7th Cir.1990), *cert. denied,* 498 U.S. 1110, 111 S.Ct. 1024, 112 L.Ed.2d 1106 (1991). We have rejected this precise issue and supporting authority. *Walker v. State,* 887 P.2d 301, 320 (Okl.Cr. 1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995); *Romano,* 847 P.2d at 392–393. *See also Bryson,* 876 P.2d at 263. Appellant presents no new authority in support of his proposition nor does he cite any evidence to support his claim. The law on this issue is settled.

**B. ISSUES RELATING TO SECOND STAGE INSTRUCTIONS**

■ Before addressing Appellant's propositions of error based upon the second stage

instructions we note defense counsel specifically accepted the instructions as given and did not offer any alternate instructions. Failure to object to instructions and submit proposed instructions waives error on appeal unless it results in a miscarriage of justice. *Floyd v. State,* 829 P.2d 981, 984 (Okl.Cr. 1992).

■ In this proposition Appellant argues Stage II Instruction No. 12 impermissibly permitted the jury to consider sympathy for the decedent when deliberating. The instruction is a modified form of OUJI–CR 442. The trial court modified the second paragraph of OUJI–CR 442 to read as follows:

All the previous instructions given you in the first part of this trial apply where appropriate and must be considered together with these additional instructions. *The only exception is that, unlike what you were instructed in the first stage of this trial, you may, in your discretion, consider sympathy as a factor in your deliberations and then determine whether or not you should give any weight to such factor under all the evidence you have heard in both first and second stages. Together the instructions in the first and second stages of this trial* contain all the law of any kind and the rules you must follow in deciding this case. You must consider them all together and not just part of them.

(O.R. at 641–642, italics added).[17]

Appellant contends the highlighted language asks the jury for sympathy for the decedent, thereby inflaming the passions and prejudices of the jurors.

We addressed this issue, and an instruction with nearly identical language, in *Bryson,* 876 P.2d at 260. In *Bryson* the second stage closing instruction was reviewed in the context of the entire trial. *Id.* Reviewing Stage II Instruction No. 12 in the context of Appellant's entire trial we find the trial court did not err by submitting this instruction.

---

**16.** Explained *infra,* in our discussion of proposition XXIV.

**17.** The standard second paragraph reads:
ALL THE PREVIOUS INSTRUCTIONS GIVEN YOU IN THE FIRST PART OF THIS TRIAL APPLY WHERE APPROPRIATE AND MUST BE CONSIDERED TOGETHER WITH THESE ADDITIONAL INSTRUCTIONS. TOGETHER THEY CONTAIN ALL THE LAW OF ANY KIND AND THE RULES YOU MUST FOLLOW IN DECIDING THIS CASE. YOU MUST CONSIDER THEM ALL TOGETHER AND NOT JUST A PART OF THEM.

The instruction was given at the end of the penalty phase. It was the last of twelve second stage instructions. The preceding eleven instructions accurately stated the law and focused the jury's considerations on the weighing of aggravating and mitigating circumstances. Finally, Appellant presented thirteen witnesses during the second stage. Rational jurors "could hardly read all of the second stage instructions without concluding that [Stage II Instruction No. 12] referred to sympathy for the Appellant." *Id.* at 260–261. Even if the jury read the instruction as referring to sympathy for decedent, such a reading would not be exclusive of sympathy for Appellant. Therefore, the trial court did not err by submitting Stage II Instruction No. 12.

 In his fifteenth proposition Appellant claims Stage II Instruction No. 5 fails to instruct the jury in accordance with the law because it does not require a finding of conscious physical suffering.[18] He claims this instruction fails to channel the jury's discretion in imposing the death penalty and is constitutionally infirm. *Maynard v. Cartwright,* 486 U.S. 356, 362, 108 S.Ct. 1853, 1858, 100 L.Ed.2d 372, 380–381 (1988). He also argues this aggravating circumstance is facially unconstitutional because, as applied by trial courts and accepted by this Court on appeal, Oklahoma does not require instructions directing juries they must find conscious physical suffering before finding existence of this aggravating circumstance.

Appellant's proposition is without merit and borders on frivolous. The very language which he insists must be included in the instruction was placed there by the trial court. He has no basis for complaining the jury in his case was improperly instructed when the very language he desires is present.

Moreover, Appellant lacks standing to challenge the constitutional validity of OUJI–

CR 436. *See Rakas v. Illinois,* 439 U.S. 128, 139–140, 99 S.Ct. 421, 428–429, 58 L.Ed.2d 387, 398–399 (1978). He received an altered form of the instruction which supplies the very language he argues is unconstitutionally absent from OUJI–CR 436.

 This Court has adopted a construction of this aggravating circumstance requiring conscious suffering in *Stouffer v. State,* 742 P.2d 562, 563 (Okl.Cr.1987), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988). This requirement is embodied in OUJI–CR 436 and has been consistently upheld as constitutional by this Court. *Clayton,* 840 P.2d at 31; *Thomas v. State,* 811 P.2d 1337, 1348 (Okl.Cr.1991), *cert. denied,* 502 U.S. 1041, 112 S.Ct. 895, 116 L.Ed.2d 798 (1992). Appellant's argument is without merit.

In his seventeenth proposition Appellant argues the jury's finding of the aggravating circumstance of "heinous, atrocious or cruel" cannot stand because the second paragraph of Stage II Instruction No. 5 does not direct the jury to consider Appellant's individual role in the murder.[19] He claims the omission of Appellant's role and behavior prevents "an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Zant v. Stephens,* 462 U.S. 862, 879, 103 S.Ct. 2733, 2744, 77 L.Ed.2d 235, 251 (1983).

 In the present case Appellant was charged with malice aforethought murder or in the alternative first degree felony murder. Because there were not separate verdict forms for each type of murder, we presume the jury must have found the evidence sufficient to support both forms of murder. *Hain v. State,* 852 P.2d 744, 752 (Okl.Cr. 1993), *cert. denied,* ── U.S. ──, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994). The jury's finding of the aggravating circumstance of "heinous, atrocious or cruel" is factually supported for both forms of murder.

---

**18.** Stage II Instruction No. 5 is derived from and mirrors OUJI–CR 436 except that the trial court inserted additional language in the second paragraph. The second paragraph of Stage II Instruction No. 5 reads:

The phrase "especially heinous, atrocious, or cruel" is directed to those crimes where the

death of the victim was preceded *by concious* (sic) *physical suffering caused* by torture of the victim or serious physical abuse.
(O.R. at 633, italics added).

**19.** *See* our discussion of Proposition XV, *supra.*

Juries must accept that the intent to commit murder is an established fact when they enter the second stage of a malice aforethought murder trial. *Mann*, 749 P.2d at 1161. The intent to commit murder will support a finding of this aggravating circumstance, even where the defendant did not participate in the actual murder. *See Van-Woundenberg v. State*, 720 P.2d 328, 335–36 (Okl.Cr.), *cert. denied*, 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986). Because the evidence is sufficient to support the jury's finding Appellant committed the murder with malice aforethought his intent to kill decedent will satisfy the requirement of sentencing based upon an individualized determination of his role in the crime. The trial court did not err in submitting Stage II Instruction No. 5 with regard to malice aforethought murder.

This aggravating circumstance is also supported with respect to Appellant's felony murder conviction. It is clear that, in felony murder trials, the sentencer must find a defendant's particular individual culpability for the resulting murder warrants the death penalty. *Tison v. Arizona*, 481 U.S. 137, 157, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127, 143 (1987); *Enmund v. Florida*, 458 U.S. 782, 801, 102 S.Ct. 3368, 3378, 73 L.Ed.2d 1140, 1154 (1982); *Fox*, 779 P.2d at 578; *Hatch v. State*, 662 P.2d 1377, 1382–1383 (Okl.Cr. 1983). The trial court's failure to focus the jury's attention on Appellant's individual role in the robbery was error with regard to felony murder. However, this Court has upheld a finding of this aggravating circumstance and sentence of death in cases where the defendant actively participated in or instigated violent felonies under circumstances likely to result in the loss of human life. *See Hatch v. State*, 835 P.2d 880, 884 (Okl.Cr. 1992); *Brogie v. State*, 695 P.2d 538, 547–548 (Okl.Cr.1985). Because the evidence is sufficient to prove Appellant instigated, directed and actively participated in the robbery under circumstances where decedent's death was likely, this aggravating circumstance is supported upon conviction for felony murder. Therefore, any error was harmless beyond a reasonable doubt. *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710; *Fontenot*, 881 P.2d at 85.

In his twenty-first proposition Appellant claims the trial court committed error by failing to instruct the jury on the presumption of life. He states a murder defendant should be presumed to be entitled to punishment other than death unless the State proves beyond a reasonable doubt that death is the only appropriate punishment. He argues the trial court committed plain error by failing to instruct the jury on the presumption of life *sua sponte*.

Appellant fails to cite to relevant authority.[20] In order to support this contention, he must cite relevant and specific authority. *VanWoundenberg*, 720 P.2d at 335. Absent plain error, we will not address assertions unsupported by legal authority. *Kennedy*, 640 P.2d at 980. Nevertheless, the law on this issue is settled and Appellant has failed to demonstrate plain error resulted. *Brown v. State*, 871 P.2d 56, 73–74 (Okl.Cr. 1994); *Duvall v. State*, 825 P.2d 621, 633–634 (Okl.Cr.1991), *cert. denied*, 506 U.S. 878, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992).

In his twenty-second allegation of error Appellant claims the trial court erred by failing to instruct the jury it could return a life sentence regardless of whether it found a death sentence warranted by the evidence. Appellant cites to two foreign jurisdictions in support of his proposition. *Moore v. Kemp*, 809 F.2d 702, 730–733 (11th Cir.), *cert. denied*, 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987); *Pruett v. Thigpen*, 665 F.Supp. 1254 (N.D.Miss.), *aff'd* 805 F.2d 1032 (5th Cir.1986), *cert. denied*, 481 U.S. 1033, 107 S.Ct. 1964, 95 L.Ed.2d 535 (1987). This authority is unpersuasive. The law in Oklahoma is clear such an instruction is not re-

---

**20.** Appellant cites *Bullington*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 and *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). Neither of these cases mentions nor even arguably touches on the presumption of life. *Bullington* addresses double jeopardy protection in the context of capital murder second stage sentencing. *Estelle* addresses the effect on the presumption of innocence by forcing defendants to wear prison clothing during trial.

quired. *Bryson*, 876 P.2d at 262–63; *Pickens*, 850 P.2d at 339.

■ In his twenty-third proposition Appellant argues the trial court erred by failing to instruct the jury that it did not have to unanimously find the existence of mitigating circumstances before it could consider them. He claims such language should have been included in either or both of Stage II Instruction Nos. 7 and 8. The law on this issue is clear and settled. Trial courts in Oklahoma are not required to instruct juries they do not have to unanimously find the existence of mitigating circumstances to consider them, nor is it error for trial courts to refuse such instructions. The only appropriate question before this Court on this issue is whether there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Mayes v. State*, 887 P.2d 1288, 1320 (Okl.Cr. 1994) *cert. denied*, —— U.S. ——, 115 S.Ct. 1260, 131 L.Ed.2d 140 (1995) (*quoting Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 1193, 108 L.Ed.2d 316, 329 (1990)). Appellant has failed to present any evidence, beyond mere speculation, that the jury applied either or both of Stage II Instruction Nos. 7 and 8 in an unconstitutional manner.

Accordingly, we find no merit in this allegation of error.

■ Appellant contends in his twenty-fourth proposition that Stage II Instruction Nos. 7 and 8 [21] erroneously invite the jury to disregard relevant mitigating circumstances in violation of *Skipper v. South Carolina*, 476 U.S. 1, 4, 106 S.Ct. 1669, 1671, 90 L.Ed.2d 1, 6 (1986), *Eddings v. Oklahoma*, 455 U.S. 104, 114, 102 S.Ct. 869, 876, 71 L.Ed.2d 1, 11 (1982), and *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973, 989–90 (1978). He specifically challenges the wording of Instruction No. 7 which reads:

> Mitigating circumstances are those which, in fairness and mercy, *may* be considered as extenuating or reducing the degree of moral culpability or blame. The determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case.

(O.R. at 635, italics added).

Appellant argues the instruction should include the word "must" instead of "may" to ensure the jury considers all relevant mitigating evidence. We have addressed and consistently rejected precisely this issue. *See Mayes*, 887 P.2d at 1320; *Malone*, 876 P.2d at 714; *Allen v. State*, 871 P.2d 79, 102

---

**21.** Stage II Instruction No. 7 is identical to OUJI–CR 438. Stage II Instruction No. 8 is derived from OUJI–CR 439 and reads:

You are instructed that you may consider the following factors as mitigating:

1. John was raised in a dysfunctional family. The conflict and suicidal depression present in his home left him without normal childhood security and guidance. Much of the male influence in his immediate family was a model of self centeredness and self-indulgence. His mother was preoccupied with maintaining her sanity and coping in this context of mental abuse.

2. The abuse and neglect John received as a child pointed him in the wrong direction.

3. While John grew into the lifestyle of a hustler, arranging crooked card games, committing petty thefts and forgeries, he was not involved in any violent crime before he fell under the influence of David Woodruff.

4. John is not the same person that was involved in criminal activity prior to his incarceration. John is a born again Christian who demonstrates his faith day by day even while in custody.

5. John is a model prisoner, and he will assist others who have committed crimes to reform and rebuild constructive lives. If not released, he will be a positive influence with other inmates, encouraging them to change their lives.

6. John will be of great benefit to society. If he is ever released he will use his influence to assist youth to avoid the pitfalls that led to his convictions. If he is not released he will continue to have a positive influence of those with the youth, such as his brother, which he has continuing contact.

7. John continues to have extensive contact with many adults outside prison and is a positive, supportive presence in their lives.

8. John has family and an unusually large number of friends who love and care about him—people who are in close and regular contact with him. John's life is vitally important to them.

Whether these circumstances existed, and whether these circumstances are mitigating, must be decided by you.

(Okl.Cr.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 370, 130 L.Ed.2d 322 (1994). The law on this issue is settled.

■ Further, the authority cited by Appellant is inapposite to his argument. *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). In *Hitchcock* the Court held the Florida sentencing scheme which required consideration of only statutorily enumerated mitigating circumstances was unconstitutional. That situation is not present in Oklahoma. No statutory lists of mitigating circumstances exist in Oklahoma, there is no statutory limitation providing only for consideration of statutorily enumerated circumstances and Oklahoma juries are permitted to consider any evidence presented in mitigation. While Oklahoma law permits defendants to specifically list and highlight certain mitigating circumstances in OUJI–CR 439, such lists are not exclusive. Jurors are free to consider any evidence which they may feel is mitigating in nature. This scheme broadens the scope of mitigating evidence jurors may consider and ensures capital defendants the fairest possible determination of the weight to be given mitigating evidence. To adopt Appellant's argument would work to limit unfairly a jury's consideration of mitigating circumstances to only those listed on second stage instructions.

■ Appellant's twenty-fifth proposition challenges the second stage balancing instruction. He contends Stage II Instruction No. 9 is contrary to the law of Oklahoma, citing *Davis v. State,* 665 P.2d 1186, 1202 (Okl.Cr.), *cert. denied,* 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177 (1983). He argues the instruction improperly skews the jury's consideration of mitigating evidence in violation of *McKoy v. North Carolina,* 494 U.S. 433, 439, 110 S.Ct. 1227, 1232, 108 L.Ed.2d 369, 378–379 (1990) and *Mills v. Maryland,* 486 U.S. 367, 380, 108 S.Ct. 1860, 1868, 100 L.Ed.2d 384, 397 (1988). Stage II Instruction No. 9 reads:

> If you unanimously find that one or more of the aggravating circumstances existed beyond a reasonable doubt, unless you also unanimously find that such aggravating circumstance or circumstances outweigh the finding of one or more mitigating circumstances, the death penalty shall not be imposed.

This instruction is identical to OUJI–CR 440. Appellant urges this Court to require an instruction based on the language approved in *Davis.*[22] We have addressed this precise issue numerous times and consistently found OUJI–CR 440 and Oklahoma's balancing scheme constitutional. *See Scott v. State,* 891 P.2d 1283, 1297 (Okl.Cr.1995); *Paxton v. State,* 867 P.2d 1309, 1323 (Okl.Cr.1993); *VanWoundenberg,* 720 P.2d at 336. Appellant presents no persuasive reason to hold otherwise.

■ In his twenty-seventh allegation of error Appellant claims the trial court erred by failing to define the phrase "beyond a reasonable doubt." He acknowledges this Court has previously held the phrase "beyond a reasonable doubt" is self-explanatory and that no definition should be given because it would be confusing. *Underwood v. State,* 659 P.2d 948, 950 (Okl.Cr.1983). However, he argues failure to define the phrase permits jurors to apply their own understanding of "beyond a reasonable doubt" and effectively makes possible verdicts based on the arbitrary impulses of jurors rather than verdicts based on reason in violation of *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). He urges this Court to align itself with the majority of jurisdictions which require or permit definition of "beyond a reasonable doubt."

We reject this argument for three reasons. First, most of the jurisdictions cited by Appellant require submission of standard instructions defining the phrase. Oklahoma has no analogous statutory or rule based mandate. Second, a reading of the authority

---

**22.** In *Davis* we found the following instruction to be in accord with 21 O.S.1991, § 701.11:

> If you do unanimously find one or more of these aggravating circumstances existed beyond a reasonable doubt and you further find that such aggravating circumstance or circum- stances is outweighed by the finding of one or more mitigating circumstances the death penalty shall not be imposed. In that event the sentence would be imprisonment for life. *Davis,* 665 P.2d at 1202.

cited by Appellant makes it clear that requiring or permitting definition of "beyond a reasonable doubt" does not alleviate confusion. *See State v. Cox*, 94 Wash.2d 170, 615 P.2d 465, 468 (1980).

■■■■■■ Third, Oklahoma law is settled on this issue. This Court has long held "beyond a reasonable doubt" should not be defined because the phrase is self-explanatory and any attempt to define it would confuse jurors. *See Templer v. State*, 494 P.2d 667, 672 (Okl.Cr.1972). This Court has held there is no constitutional requirement to define "beyond a reasonable doubt." *Spitznas v. State*, 666 P.2d 1307, 1307–1308 (Okl.Cr. 1983). In fact, we have held it is reversible error for trial courts to try to define "beyond a reasonable doubt." [23] Oklahoma's law on this issue has remained unchanged since territorial days. *Jones v. State*, 554 P.2d 830, 835 (Okl.Cr.1976); *Wallace v. State*, 250 P.2d 484, 485 (Okl.Cr.1952) (*quoting Abbott v. Territory*, 94 P. 179 (Okl.Cr.1908)). Finally, it is not error not to instruct the jury even when requested by the defendant. *Grant v. State*, 703 P.2d 943, 946 (Okl.Cr.1985). Appellant has failed to present any persuasive reason why requiring or permitting definition of "beyond a reasonable doubt" would assist jurors or eliminate confusion.

## C. ISSUES RELATING TO SECOND STAGE VERDICT FORMS

■■■ Before addressing the propositions of error relating to the verdict forms we note defense counsel did not offer substitute verdict forms and did not object to the verdict forms submitted by the trial court. Failure to object to the verdict forms and to offer alternate verdict forms waives all but plain error for appellate review. *Neill v. State*, 896 P.2d 537, 552 (Okl.Cr.1994); *Fogle v. State*, 700 P.2d 208, 212 (Okl.Cr.1985).

■■■■ Appellant alleges in his eighteenth proposition the jury's finding of the aggravating circumstance of "heinous, atrocious or cruel" cannot stand because the

verdict form does not reiterate that the murder must have been preceded by torture or serious physical abuse. He admits the second paragraph of Stage II Instruction No. 5 may have adequately narrowed application of this aggravating circumstance.[24] However, he argues the verdict form, absent language of torture or physical abuse, allows the jury to disregard the limiting language of Instruction No. 5. Where terms or crimes are defined in one instruction and used in other instructions this is sufficient. *Coulter v. State*, 734 P.2d 295, 300 (Okl.Cr.1987).

■■■ In his twenty-sixth proposition of error Appellant claims 21 O.S.1991, § 701.11 is unconstitutional. He argues the statute requires juries to make specific findings of fact in direct conflict with Article 7, § 15 of the Oklahoma Constitution. He recognizes we upheld the constitutionality of § 701.11 in *Romano*, 847 P.2d at 384–385, but argues the reasoning employed was misplaced. He now invites us to revisit the issue.

■■■■■ Our reasoning in *Romano* is clear and the conclusions sound. A general verdict must be wholly determinative of the *guilt or innocence* of a defendant. Further, "the constitutional right to jury trials in Oklahoma relates only to the determination of *guilt*." *Id. citing* Okl. Const. art. 2, § 19. In addition, "The law and procedure to be followed in *sentencing* an individual convicted of a criminal offense is found in the statutory provisions of Title 21 and 22, specifically in 22 O.S.1981, § 926 and 21 O.S.1981, § 701.10. ... (N)o restraints [prohibit] the Legislature from enacting statutory provisions governing the *sentencing* of defendants convicted of first degree murder." *Id.* (emphasis added). *See also Bryson*, 876 P.2d at 261.

■■■■ In his seventh proposition of error Appellant claims defense counsel was ineffective in the second stage of trial. He argues defense counsel failed to adequately advocate his cause by: (1) precipitating testimony that Appellant was convicted for the Sarfaty murder; (2) not seeking a continu-

---

**23.** *Summers v. State*, 704 P.2d 91, 92 (Okl.Cr. 1985); *Faubion v. State*, 569 P.2d 1022, 1024 (Okl.Cr.1977).

**24.** This very paragraph was attacked by Appellant as inadequate and found sufficient in our discussion of Proposition XXV, *supra*.

ance to subpoena more witnesses to testify about Appellant's exemplary behavior on death row; and (3) presenting evidence that, as a teenager, Appellant sexually and physically abused his younger sisters for years.

To successfully prove ineffective assistance of counsel, Appellant must show: (1) that defense counsel's performance was deficient; and (2) that he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the Court stated the "touchstone of an ineffective assistance claim is the fairness of the adversary proceeding." *Id.* at ——, 113 S.Ct. at 843, 122 L.Ed.2d at 189. Unreliability or unfairness does not result unless the ineffectiveness of counsel deprived Appellant a substantial or procedural right to which he is entitled by law. *Id.* at ——, 113 S.Ct. at 844, 122 L.Ed.2d at 191. We must determine whether, but for the allegedly deficient performance, the result at trial would have been different. *Fontenot v. State*, 881 P.2d 69, 86 (Okl.Cr.1994).

In reviewing claims of ineffectiveness, we indulge in a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance. *Camron v. State*, 829 P.2d 47, 55 (Okl.Cr.1992). Appellant must overcome the presumption that the challenged action might be considered sound trial strategy under the circumstances. *Id.* at 55–56.

In the present case the trial court conducted an *in camera* hearing, sua sponte, after the testimony of Erlene Logan. The purpose of the hearing was to caution both parties that, while Appellant's incarceration was a legitimate subject of inquiry, his incarceration on death row and conviction for the Sarfaty murder were not because the latter evidence would be highly prejudicial. The trial court emphasized the State could not get into the subject of Appellant's murder conviction unless a witness opened the door to the topic and cautioned defense counsel to instruct witnesses accordingly. Appellant now contends defense counsel was ineffective for "opening the door" to Appellant's conviction for the Sarfaty murder.

After the hearing defense counsel presented five witnesses who testified they met Appellant while he was incarcerated. None of these witnesses testified in a manner which allowed cross examination into Appellant's former convictions. While questioning Dorene Skinner on direct examination the following questions and answers were given:

Q. The fact that Mr. Romano, you know I'm sure has been convicted of murder in the first degree. Does that affect your attitude towards him?

A. Oh, no. Not at all.

Q. Would you still continue—do you still want to maintain some relationship and even have your 13 year old daughter be around him?

A. **Yes. John hasn't—like I said, he's done nothing but good things for us. I can never acknowledge, you know, think of John ever doing wrong. I mean, ever since I have ever known him he has done great things.**

(Tr. at 1152, emphasis added).

The prosecutor then asked the witness whether her opinion would change knowing Appellant had various convictions including one for the Sarfaty murder. The remaining three witnesses testified in a manner which precluded similar cross examination.

We find defense counsel was not ineffective on this issue. It is evident defense counsel cautioned witnesses against making comments which could "open the door" and asked questions designed to avoid the problem. Defense counsel cannot be faulted with Skinner's unsolicited commentary. This argument is without merit.

Appellant further argues that once this evidence was before the jury defense counsel should have moved for a continuance in order to obtain witnesses who could testify to Appellant's behavior on death row. This argument also is without merit. Other witnesses testified, successfully, that Appellant was an exemplary prisoner who no longer posed a threat to society. Any other witnesses would have been cumulative. Further, defense counsel ably demonstrated Appellant was not

a continuing threat since the jury did not so find.

The remaining issue, concerning the testimony of Appellant's sister LeAnn Karr, is likewise without merit. Karr's testimony emphasized Appellant's wretched upbringing and that he emulated the behavior which he saw at home. Her testimony also effectively illustrated the transformation of Appellant from a victimizer to a born again Christian. Appellant fails to show defense counsel was ineffective in presenting Karr. The jury was fully aware Appellant had behaved abhorrently in the past and was violent. Any damage her testimony could have caused would be to emphasize Appellant was a continuing threat, an aggravating circumstance not found by the jury. On the contrary, her testimony added to the proof Appellant was no longer a threat to society. Appellant fails to show that, absent defense counsel's conduct in the second stage of trial, the jury would have concluded that the balance of aggravating and mitigating evidence did not warrant death. *Paxton,* 867 P.2d at 1329; *Boyd v. State,* 839 P.2d 1363, 1375 (Okl.Cr. 1992).

### *MANDATORY SENTENCE REVIEW*

 Pursuant to 21 O.S.Supp.1987, § 701.13(C), this Court must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of aggravating circumstances as enumerated in 21 O.S.Supp.1987, § 701.12. The presentation of evidence of the Sarfaty murder did not influence the jury in its decision to recommend the death sentence.[25] The trial court went to great extremes to protect the rights of Appellant and should be commended. Counsel for both Appellant and the State conducted the trial with care to abide by the trial court's orders. Moreover, sufficient evidence exists to support both aggravating circumstances alleged by the State: the murder was heinous, atrocious or cruel; and was committed to avoid arrest or prosecution. In mitigation Appellant presented evidence that: he is a model prisoner; he is a

born again Christian who assists with and participates in prison ministries; he has many loving relationships with family and friends; he had a troubled upbringing in a dysfunctional family which included drug use and violence as a means to solve problems; and he was not involved in violent criminal activity before meeting Woodruff. After carefully weighing the aggravating circumstances and all mitigating evidence, we find the aggravating circumstances outweigh the mitigating evidence. The sentence of death is factually substantiated and appropriate. Finally, no error exists warranting reversal or modification.

The judgment and sentence of the trial court is **AFFIRMED**.

JOHNSON, P.J., and CHAPEL, V.P.J., concur.

LANE, J., concurs in result.

LUMPKIN, J., specially concurs.

LUMPKIN, Judge, specially concurring:

I concur in the Court's decision in this case and again urge the Court to adopt a unified "Spuehler-type" approach to evaluating both direct and circumstantial evidence. *See White v. State,* 900 P.2d 982, 993–95 (Okl.Cr. 1995) (Lumpkin, J., Specially Concurring). The parsing of the standard of review is no longer supported in the law. *Id.* And, when both standards are utilized to evaluate different parts of the evidence presented in the same trial, as in the present case, the parsing appears somewhat whimsical. The Court should seek to resolve this unsupported dichotomy. I compliment my colleague for an excellent, well-reasoned opinion.

LANE, Judge, concurring in result.

I do not believe that the majority's characterization of Appellant's nod of the head as an adoptive admission is either correct or necessary. The majority finds that the nod was a non verbal action. However, if you accept the definition of the word "verbal" as being "of, relating to, or associated with

---

**25.** As addressed in our discussion of Proposition XI, *supra.*

words"[1] then a nod of the head becomes a verbal action since it is accepted in our society as an action conveying agreement or the same meaning as the word "yes". Therefore, Appellant gave a positive response to the question asked, and it is up to the jury to determine the meaning of the answer.

---

1. *Webster's II New Riverside Dictionary*, Riverside Press, 1984, p. 1281.